DOWNEY BRAND LLP
MICHAEL J. THOMAS (Bar No. 172326)
ANDREW L. COLLIER (Bar No. 191137)
SEAN J. FILIPPINI (Bar No. 232380)
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
mthomas@downeybrand.com
acollier@downeybrand.com
sfilippini@downeybrand.com

Attorneys for Defendants/Counterclaimants
FADEI USA, INC., PAN AMERICAN ENGINEERING
and EQUIPMENT CO., INC. MANUEL SILVA, and
MARIANI PACKING CO., INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTAN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FADEI USA, INC., PAN AMERICAN ENGINEERING and EQUIPMENT CO., INC. MANUEL SILVA, and MARIANI PACKING CO., INC.,<br><br>Defendants.<br><br>_____<br><br>AND RELATED CROSS-ACTION. | Case No. C 10-4862 JCS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date:      September 14, 2012<br>Time:    9:30 a.m.<br>Dept:    Courtroom G, 15th Floor<br>Judge:  Hon. Joseph C. Spero |

/ / /

/ / /

/ / /

/ / /

/ / /

DOWNEY BRAND LLP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    FACTS .......................................................................................................... 3

       A.    The Parties and the Claims.................................................................... 3

       B.    The '949 Patent ...................................................................................... 4

       C.    The Court's Claim Construction Order.................................................... 6

       D.    Mechanics And Operation Of The Accused Pitters ................................ 7

       E.    Plaintiff's Amended Infringement Contentions ..................................... 9

       F.    Defendants' Meet and Confer Efforts with Regard to Undisputed Material
             Facts ...................................................................................................... 9

III.   LEGAL STANDARD .................................................................................... 10

       A.    Summary Judgment Standard .............................................................. 10

       B.    Non-Infringement Standard Under 35 U.S.C. Section 112, par. 6...... 11

IV.    ARGUMENT ................................................................................................ 12

       A.    The Accused Pitters Do Not Infringe the '949 Patent........................... 12

             1.    The Accused Pitters Do Not Have an Active Assembly.......... 12

             2.    The Accused Pitters Do Not Have Actuators that Move Cam Tracks
                   "In Response To Control Signals." .......................................... 15

             3.    The Accused Pitters Do Not Infringe Under the Doctrine of
                   Equivalents as Applied to a Section 112, ¶6 Claim Term......... 16

             4.    Plaintiff's Contention That "The Active Assembly Of At Least One
                   Of The Accused Instrumentalities Also Comprises A Spring That
                   Assists In Moving The Pockets Of Each Of The Holders From The
                   Closed Configuration To The Open Configuration After The Pitting
                   Operation" Is Uncontrovertibly False ...................................... 17

       B.    The '949 Patent is Invalid for At Least Two Independent Reasons. .... 18

             1.    The Court Should Reach the Question of Invalidity on This Motion
                   For Summary Judgment Even Though Plaintiff Cannot Establish
                   Infringement........................................................................... 18

             2.    Claims 5 and 12 of the '949 Patent are Indefinite and Violate the
                   Requirements of 35 U.S.C. section 112 .................................. 18

i

DOWNEY BRAND LLP

3.      The Written Description of the '949 Patent Does Not Support the Temporal Limitations of the Claim Term "Pitting Operation."................ 21

C.      The Court Should Decline Jurisdiction Over the Remaining Contract Claim ...... 24

V.      CONCLUSION .......................................................................................................... 25

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**FEDERAL CASES**

*Acri v. Varian Associates, Inc.*,
   114 F.3d 999, 1000-01 n.3 (9th Cir. 1997) ............................................................ 24

*AllVoice Computing PLC v. Nuance Commc'ns., Inc.*,
   504 F.3d 1236, 1241 (Fed. Cir. 2007) ................................................................... 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 255 (1986) ...................................................................................... 10

*Applied Med. Resources Corp. v. United States Surgical Corp.*,
   448 F.3d 1324, 1333 (Fed. Cir. 2006) ................................................................... 11

*Atmel Corp. v. Info. Storage Devices, Inc.*,
   198 F.3d 1374, 1381-82 (Fed. Cir. 1999) ............................................................. 19

*Bateman v. Por-Ta Target, Inc.*,
   155 Fed. Appx. 511, 516-17 (Fed. Cir. 2005) ...................................................... 16

*Biomedino, LLC v. Waters Techs. Corp.*,
   490 F.3d 946, 948 (Fed. Cir. 2007) ............................................... 2, 10, 13, 19, 21

*Blackboard, Inc. v. Desire2Learn Inc.*,
   574 F.3d 1371, 1385 (Fed. Cir. 2009) ................................................................... 19

*California Dept. of Water Resources v. Powerex Corp.*,
   533 F.3d 1087 (9th Cir. 2008) ............................................................................... 24

*Capon v. Eshhar*,
   418 F.3d 1349, 1357 (Fed. Cir. 2005) ................................................................... 22

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83, 96 (1993) .......................................................................................... 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986) ...................................................................................... 10

*Chicago v. International College of Surgeons*,
   522 U.S. 156, 173 (1997) ...................................................................................... 24

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303, 1309 (Fed. Cir. 1998) ............................................................. 11, 16

*Conopco, Inc. v. May Dep't Stores Co.*,
   46 F.3d 1556, 1562 (Fed. Cir. 1994) ..................................................................... 12

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   469 F.3d 1005, 1016-17 (Fed. Cir. 2006) ............................................................. 11

iii

DOWNEY BRAND LLP

*Enzo Biochem, Inc. v. Gen-Probe, Inc.,*
    323 F.3d 956, 969-70 (Fed. Cir. 2002) ............................................................ 22

*Ergo Licensing, LLC v. CareFusion 303, Inc.,*
    673 F.3d 1361, 1363 (Fed. Cir. 2012) ............................................ 2, 19, 20, 21

*Executive Software N. Am. v. United States,*
    24 F.3d 1545, 1557 (9th Cir. 1994) ............................................................... 24

*Freedman Seating Company v. American Seating Company,*
    420 F.3d 1350, 1356-57 (Fed. Cir. 2005) ............................................... 10, 15

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
    896 F.Supp 1522, 1530 (D. Colo. 1995) ......................................................... 18

*Hieger v. Ford Motor Co.,*
    516 F.2d 1324, 1327 (6th Cir. 1975) .............................................................. 18

*Icon Health & Fitness, Inc. v. Octane Fitness,* LLC,
    2011 WL 2457914, at *9 (D. Minn. June 17, 2011); Fed. Cir. Appeal pending) ................. 15

*In re Barker,*
    559 F.2d 588, 592 n.4 (CCPA 1977) .............................................................. 22

*In re Curtis,*
    354 F.3d 1347, 1357 (Fed. Cir. 2004) ............................................................ 22

*In re Donaldson Co.,*
    16 F.3d 1189, 1195 (Fed. Cir. 1994) .............................................................. 19

*Innovative Scuba Concepts Inc. v. Feder Industries Inc,*
    819 F.Supp. 1487, 1496 (D. Colo. 1993) ....................................................... 18

*Invitrogen Corp. v. Clontech Labs., Inc.,*
    429 F.3d 1052, 1072-73 (Fed. Cir. 2005) ...................................................... 11

*Lear, Inc. v. Adkins,*
    395 U.S. 653, 670 (1969) ................................................................................ 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 585 (1986) ................................................................................ 10

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205, 1219 (Fed. Cir. 2003) ............................................................ 19

*Moba, B.V. v. Diamond Automation, Inc.,*
    325 F.3d 1306 (Fed. Cir. 2003) ...................................................................... 22

*Netword, LLC v. Centraal Corp.,*
    242 F.3d 1347, 1353 (Fed. Cir. 2001) ............................................................ 10

DOWNEY BRAND LLP

iv

*Panduit Corp. v. Hellerman Tyton Corp.,*
451 F.3d 819, 826 (Fed. Cir. 2006)........................................................ 11

*Regents of the University of California v. Eli Lilly,*
119 F.3d 1559, 1566 (Fed. Cir. 1997)..................................................... 22

*Reynolds v. County of San Diego,*
84 F.3d 1162, 1171 (9th Cir. 1996).................................................. 24, 25

*Solomon Technologies, Inc. v. U.S. Int'l Trade Comm'n,*
524 F.3d 1310, 1319-20 (Fed. Cir. 2008) ............................................... 18

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,*
537 F.3d 1357, 1371 (Fed. Cir. 2008) .................................................... 11

*Tronzo v. Biomet, Inc.,*
156 F.3d 1154, 1160 (Fed. Cir. 1998)..................................................... 11

*United Mine Workers v. Gibbs,*
366 U.S. 715, 726 (1966) ...................................................................... 24

*Univ. of Rochester v. G.D. Searle & Co.,*
358 F.3d 916, 920-23, (Fed. Cir. 2004) .................................................. 22

*Vas-Cath, Inc. v. Mahurkar,*
935 F.2d 1555, 1560 (Fed. Cir. 1991)..................................................... 22

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
520 U.S. 17, 39 (1997) .......................................................................... 11

*Welker Bearing Co. v. PhD, Inc.,*
550 F. 3d 1090, 1099 (Fed. Cir. 2008)....................................... 11, 14, 15, 16, 17

**FEDERAL STATUTES**

28 U.S.C. § 1367(c)(3).............................................................................. 24

28 U.S.C § 1391 ......................................................................................... 4

28 U.S.C § 1400 ......................................................................................... 4

35 U.S.C. § 112 ...................................................... 1, 2, 6, 10, 11, 15, 16, 17, 18, 19, 20, 21

35 U.S.C. § 271 ........................................................................................ 24

35 U.S.C. § 285 ........................................................................................ 25

**FEDERAL RULES**

Fed. Rule Civ. Proc. 56 ............................................................................ 10

DOWNEY BRAND LLP

# I.    INTRODUCTION

According to Plaintiff's Amended Infringement Contentions, the only claims allegedly infringed, and the only claims at issue in this action, are independent claims 5 and 12 of U.S. Patent No. 5,870,949 (the "'949 Patent" or "Patent").  But there can be no infringement of these claims because, under Plaintiff's own contentions, each of the accused fruit pitting machines ("Accused Pitters") lacks one or more essential element of claims 5 and 12.  Moreover, the 949 Patent is invalid.  For these reasons, Defendants request that the Court grant summary judgment in their favor.  And, because Plaintiff's sole state law claim is not closely connected with the patent claim and has not yet been considered by the Court, Defendants ask that the Court decline to exercise supplemental jurisdiction over that claim.

In its claim construction order ("Order"), the Court construed the claim term "active assembly" as a means-plus-function element pursuant to 35 U.S.C. section 112, paragraph 6.  Plaintiff resisted this means-plus-function construction because it understood that the Accused Pitters lacked whatever "corresponding structure" might be identified in the '949 Patent specification.  Over Plaintiff's objections, the Court ruled that the corresponding structure for the term "active assembly" is:

> An assembly containing pneumatically – or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, where the actuators move the cam tracks in response to control signals generated by a timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly.

This construction is dispositive in Defendants' favor.  Plaintiff's Amended Infringement Contentions fail to identify any solenoid- or pneumatically-driven actuator (whether mechanical linear or not) in the Accused Pitters – because there is none.  The Accused Pitters close the pockets of fruit holders with rotating passive linkages attached to a closing bar.  The passive linkages are driven by a rotating electric motor and a rotating crank arm attached to the motor shaft.  There is no solenoid- or pneumatically-driven actuator.  Indeed, these linkages are not actuators at all, because the rotating linkages are entirely passive.

There is at least a second, independent basis precluding infringement.  The rotating passive linkages in the Accused Pitters do not move "in response to control signals."  Instead, as noted, the

1

passive linkages are driven by the output of a rotating electric motor and a rotating crank arm (which also happen to drive the knives in lock step with the linkages). As Defendants' supporting expert declaration establishes, the force of the crank causing movement is not a "signal." That force does not signal anything to move; it moves it. Moreover, the timing of the pocket closure on the Accused Pitters cannot be adjusted without remanufacturing the machine—there is no "signal" that can be adjusted to "control" when the pockets close in relation to when pitting occurs. The Accused Pitters are distinct from the patented technology because they work without the need for control signals or timing systems, and thus operate more simply and reliably.

Not only do the Accused Pitters not infringe the '949 Patent, but the Patent is invalid for at least two reasons. The first again flows from the Court's construction of "active assembly" as a means-plus-function. "In exchange for the ability to use a generic means expression for a claim limitation, 'the applicant **must** indicate in the specification what structure constitutes the means.'" *Ergo Licensing, LLC v. CareFusion 303, Inc.,* 673 F.3d 1361, 1363-65 (Fed. Cir. 2012) (citing *Biomedino, LLC v. Waters Techs. Corp.,* 490 F.3d 946, 948 (Fed. Cir. 2007) (emphasis added). Vague references in the specification that may encompass a number of different structures are insufficient. *See Ergo Licensing* (holding that "control device" in specification is no more precise than "control means" and is invalid because it may encompass three different types of devices); *Biomedino,* 490 F.3d at 948 (holding that specification lacked adequately precise structure required under section 112 paragraph 6 for "control means" where it merely stated the invention "may be controlled automatically by known differential pressure, valving and control equipment.").

In its Order, this Court ruled that the "control signals and the timing system that generates them" (*i.e.,* the control signaling means) are "necessary to the functionality described in the claims," and it therefore included them in the means-plus-function construction. This renders the '949 Patent invalid under *Ergo* and *Biomedino* because the specification discloses no adequate structure corresponding to "control signals and the timing system that generates them." The patent fails to identify any particular means of generating control signals, instead, as in *Biomedino,* vaguely stating that they "can be generated (in any of a number of well known ways) by a conventional timing system . . ." Under *Biomedino,* vague references to "known" ways of

2

DOWNEY BRAND LLP

DOWNEY BRAND LLP

1  performing a function are inadequate.  Because a "conventional timing system" could mean dozens

2  of things – from a computer to a human being – the patent is invalid.

3      The '949 Patent also is invalid because its written description contains nothing to support

4  the Court's construction of "pitting operation" as "the process of removing a pit from a fruit and

5  which continues until the pit is outside of the fruit."  The patent in no way indicates that Plaintiff

6  was in possession of an invention with a temporal correlation between the timing of when the

7  pockets of the holders open and close and the position of the pit, nor does it disclose any means of

8  sensing pit position.[1]

9              **II.      FACTS**

10  **A.      The Parties and the Claims**

11      As alleged in the Complaint, the remaining Defendants are Fadei USA, Pan American,

12  Manual Silva, and Mariani Packing Co., Inc. (hereinafter "Defendants").[2]  Plaintiff Vistan

13  Corporation claims to be the owner of United States Patent No. 5,870,949.  Compl. ¶ 11.  Claim 1

14  of the Complaint (which Plaintiff styles as a "count") alleges that each of the Defendants is liable

15  for infringement of the '949 Patent.  *Id.* ¶¶ 59-62.  Claim 2 alleges that Defendants Fadei USA, Pan

16  American, and Manual Silva is each liable for inducing Mariani to infringe the '949 Patent.  *Id.* ¶¶

17  63-66.  Claim 3 alleges that Mariani is liable for allegedly inducing each of the other Defendants to

18  infringe the '949 Patent.  *Id.* ¶¶ 67-69.  Claim 4 alleges that Mariani breached the terms of an

19  alleged contract between Plaintiff and Mariani by allegedly sharing certain information and

20  allegedly not allowing certain inspections to occur.  *Id.* ¶¶ 70-80.  Claim 5 alleges that Defendants

21  Pan American and Silva are in contempt of a court-ordered injunction for selling, offering to sell,

22  leasing, distributing, or using any fruit pitting machines that infringe the '949 Patent.  *Id.* ¶¶ 81-83.

23  Each of Plaintiff's Claims 1, 2, 3 and 5 requires Plaintiff to establish that Defendants have infringed

24  the '949 Patent, and each of these claims depends upon the validity of the '949 Patent.

25  _____

26  [1] In footnote 3 of its Claim Construction Order, the Court indicated it was not inclined to consider the
argument that Plaintiff's construction of "pitting operation" and the temporal limitations urged by Plaintiff
based on the condition of the fruit would violate the written description rule – but stated that the issue
27  could be raised on summary judgment.

28  [2] Defendant Fadei S.A. was originally named in the Complaint, but was later dismissed.  (ECF Docket No.
15).

1    Accordingly, without infringement of a valid patent, Claims 1, 2, 3, and 5 necessarily fail.

2           Defendants each filed Answers denying liability and asserting affirmative defenses.  ECF

3    Nos. 9 and 10.  Each of the Defendants also asserted counterclaims for declaratory judgment of

4    non-infringement and invalidity of the '949 Patent.  *Id.*

5           The only alleged basis for subject matter jurisdiction is federal question jurisdiction under

6    28 U.S.C sections 1331, 1338, 1367.  Plaintiff alleges supplemental jurisdiction over the state

7    contract claim (Claim 4) against Mariani under 28 U.S.C sections 1400 and 1391.  Compl. ¶¶ 8-9.

8    In this regard, only minimal discovery concerning Plaintiff's breach of contract claim against

9    Mariani has been conducted, and this claim has not been the subject of any hearings or Court

10   orders.  Declaration of Michael Thomas ("Thomas Decl.") ¶ 10.  The only substantive hearing to

11   date has been the *Markman* hearing.  *Id.*

12   **B.      The '949 Patent**

13          The '949 Patent claims a fruit pitting machine with two embodiments.  Thomas Decl., ¶ 2

14   (attaching as Exhibit A a copy of the '949 Patent).  Claim 1 and its dependent claims are to a pitting

15   machine that operates in a continuous manner and is not at issue here.  *Id.*  Independent Claims 5

16   and 12, along with their dependent claims, relate to a fruit pitting machine that operates in an

17   intermittent manner, *i.e.* the fruit holders temporarily stop moving, thereby allowing pitting to

18   occur while the holders are stationary.  *Id.*

19          Claims 5 and 12 of the '949 Patent contain the following limitations, respectively, that are

20   addressed in the present motion:

21                  *Claim 5:*

22          "…an active assembly positioned to engage the holders as the holders pass the pitting
            knife assembly, and configured to cause the pockets of each of the holders to be in the
23          closed configuration during the pitting operation and to move the pockets of said each of
            the holders from the closed configuration to the open configuration after the pitting
24          operation thereby improving efficiency of separation of pitted fruit flesh from the holders
            after said pitting operation."
25

26   Thomas Decl., Ex. A, col. 21, lines 43 - 51.

27

28

### *Claim 12:*

"…an active assembly positioned to engage the holders as the holders pass the pitting knife assembly, and configured to move relative to the holders so as to vary the gripping force exerted by the pockets on specimens of fruit held in said holders during and after the pitting operation, thereby improving efficiency of separation of pitted fruit flesh from the holders after said pitting operation."

Thomas Decl., Ex. A, col. 22, lines 47 - 54.

### *References to Control Signals and Conventional Timing System*

With respect to "control signals," the specification of the '949 Patent states, "The control signals can be generated (in any of a number of well known ways) by a conventional timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly . . ." Thomas Decl. Ex. A col. 20, lines 8-12. The '949 Patent provides no further information about the control signals, the manner in which they may be generated, or the structure or apparatus that might be used for doing so. *Id.* The '949 Patent does not specify any of the alleged "number of well known ways" of generating control signals. *Id.*

The term "conventional timing system" used in the '949 Patent does not identify a particular structure that is capable of generating control signals. As expert Dr. Richard Klopp explains in his declaration, a conventional timing system could be any of dozens of devices, including, but not limited to, a digital computer, a programmable logic controller (a digital-computer-based system typically for industrial machine and process control), an analog integrated circuit (such as a LM555 timer chip), an analog discrete circuit, a mechanical escapement, a dashpot, a lighted fuse, a heated bimetallic strip, or even a human being. Klopp Decl., ¶¶ 70 - 73.

### *References to "Actuators" in the Specification*

The Court further ruled that "'[p]neumatically' and 'solenoid' are the only types of 'actuator' identified." (Order, page 26, lines 21-25). The Court ruled that "preferred embodiments are part of the entire class of embodiments; therefore these (mechanical linear) actuators in the preferred embodiments must be "actively (e.g., pneumatically, or by solenoid) driven" and included "mechanical linear actuators" as part of the corresponding structure in the Court's claim construction in an "abundance of caution." Order at 27:12-18.

As explained in the Declaration of Dr. Klopp, a mechanical linear actuator is one that

DOWNEY BRAND LLP

*causes* motion between two machine elements wherein the motion occurs along a straight line. Klopp Decl., ¶¶ 30-34. And because mechanical linear actuators *cause* motion, they must be powered devices. *Id.*

### Pitting Operation/Temporal Limitations

Although, as noted below, the Court has construed the term "pitting operation" that appears in the claims to have a temporal limitation, the *written description* of the '949 Patent does not identify the instant in time when the "pitting operation" ends or how long it lasts. Thomas Decl., Ex. A; Order, page 13, lines 11-13. The written description of the '949 Patent does not state that the "pitting operation" ends at the instant in time when the pit is outside the fruit or removed from the fruit. Nor does the written description of the '949 Patent identify the instant in time when, during the path of the travel of the knife drive assembly, a pit of a given fruit will be outside the fruit. *Id*

The written description of '949 Patent also does not include reference to any structure, device, or feature that senses or detects the position of a pit relative to the fruit being pitted, at any point in time. Thomas Decl., Ex. A; Klopp Decl., ¶¶ 74-77.

## C.    The Court's Claim Construction Order

On April 27, 2012, the Court issued its Claim Construction Order. The Court construed, among others, the following terms, each of which appears in Claims 5 and 12 of the '949 Patent:

**Active Assembly**: (construed under 35 U.S.C. 112, ¶ 6, as a means-plus-function claim)

Structure:  An assembly containing pneumatically – or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, where the actuators move the cam tracks in response to control signals generated by a timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly.

Function:  to engage the holders as the holders pass the pitting knife assembly, and, either (claim 5) to cause the pockets of the holders to be closed during the pitting operation and to move to the open configuration after the pitting operation, or, (claim 12) move relative to the holders so as to vary the gripping force exerted by the pockets on the fruit at appropriate times during and after the pitting operation. (Order, page 37, row 4.)

The Court also ruled that the "control signals and the timing system that generates them" (i.e. the control signaling means) are "necessary to the functionality described in the claims" and

6

DOWNEY BRAND LLP

included them as essential elements in the means plus function construction.  Order at 28:15-19.

**Pitting Operation:**

"The process of removing a pit from a fruit and which continues until the pit is removed from the fruit," *and* "The process of removing a pit from a fruit and which continues until the pit is outside of the fruit."  (Order at 13:12-13, 37:row 2)

## D.    Mechanics And Operation Of The Accused Pitters

Defendants' next describe the mechanics and operation of the Accused Pitters.  In brief summary, there is no genuine issue of material fact on the following issues, as set forth more fully in the accompanying Declaration of Dr. Richard Klopp and attached exhibits:

1.    The Accused Pitters do not contain an "active assembly," or equivalent thereof. Klopp Decl., ¶¶35-61.

2.    The Accused Pitters do not contain pneumatically-driven actuators or equivalents thereof connected to a pair of cam tracks.  *Id*. at ¶28, 45, 52.

3.    The Accused Pitters do not contain solenoid-driven actuators or equivalents thereof connected to a pair of cam tracks.  *Id*. at ¶29, 46, 53.

4.    The linkages which relay movement to close the pockets do not move *linearly* and instead move in complex non-linear rotational paths.  *Id*. at ¶¶30-61.

5.    The linkages which relay movement to close the pockets are passive linkages, and are not actuators.  *Id*. at ¶¶30-61.

6.    The Accused Pitters do not move cam tracks in response to control signals, or equivalents thereof.  *Id*. at ¶¶62-69.

A clear understanding of the Accused Pitters is critical to analyzing the relief sought in this Motion.  While Defendants provide the following abbreviated summary, they respectfully submit that it is critical the Court have the mechanics and operation of the Accused Pitters in its mind's eye – which is why photographs, video, and schematics have been provided, along with a detailed description of operation in the accompanying Declaration of Dr. Klopp.  When one is familiar with the mechanics and operation of the Accused Pitters, non-infringement is plain.

As more specifically set forth in Dr. Klopp's Declaration, the Accused Pitters generally consist of a frame supporting a horizontal endless loop conveyor that transports fruit in holders past a pitting station.  The pitting station generally consists of a set of knives that reciprocates up and down to remove pits from prunes nestled in pockets in the fruit holders.  The Accused Pitters use

7

DOWNEY BRAND LLP

intermittent motion, such that the conveyor is stopped while pitting occurs and only advances at some point after the knives are clear of the holders. Klopp Decl., ¶35, and Ex's 3, 4, 5, 6, 7, 8, 9.

As depicted in the videos, (Klopp Decl., Ex 4) the pockets of the Accused Pitters open and close in nominal synchronism with the motion of the conveyor and with the motion of pitting knives, which descend from above and "punch" the pits out the bottoms of the prunes. *Id*. at ¶36

During part of the cycle of pitting knife motion, closing bars push against rollers on the fruit holders, causing the pockets to close. There are no solenoid-driven or pneumatically-driven actuators that move the closing bars or rollers. *Id*. at ¶¶45, 46. Instead, the closing bars are moved by a set of passive rotating mechanical linkages piggybacked on and moving in lock-step mechanical motion with the pitting knife drive. *Id*. at ¶¶30-61. The passive linkages are moved by the rotating output of a crank arm that is attached to the rotating output of a rotating motor. *Id*. No point of any of the linkages moves in a straight line; instead, each takes a complex nonlinear path through space. *Id*. at ¶¶ 41, 42.

One of the linkages is referred to in the Exhibits to the Klopp Declaration as a "Connecting Rod." Like all the others, this passive linkage moves in a complex non-linear path. Klopp Decl.,¶41. Moreover, it is not an actuator because it does not cause displacement between two machine components. *Id*. at ¶¶27, 30-34, 39. It merely passively relays motion from one component to another. *Id*. As Dr. Klopp explains, "one cannot place the Connecting Rods on a workbench, connect them to a power source, and cause them to actuate." Klopp Decl.,¶59. Indeed, the '949 Patent discloses all sorts of linkages, sliding rods, springs and moving parts, but the Court correctly noted that it only discloses two types of *actuators*: pneumatically driven and solenoid driven. Order at 26:25. Like the Connecting Rod, none of these linkages in the Accused Devices is a powered device capable of causing displacement between two machine elements. Therefore, they each fail to qualify as an *actuator*. *Id*. at ¶ 39.

As a result of the rotating linkages driven by the rotating crank, the closing bars move in lock-step response to knife movement. They do not move in response to any signal, control or otherwise. *Id*. at ¶62-69. There is no cam track response to a control signal as required by the Court's claim construction. *Id*. The timing of when these linkages move the rollers on the fruit

8

holders cannot be controlled or adjusted without physically altering the machine. *Id*. at ¶68.

**E.** **Plaintiff's Amended Infringement Contentions**

After the Court issued its Order, Plaintiff provided its Amended Infringement Contentions. (ECF Nos. 68, 70); Thomas Decl., Ex. B (Plaintiff's Redlined Amended Infringement Contentions). Plaintiff now alleges that "[t]he Accused Instrumentalities each have an active assembly" and provides the following narrative explanation:

> "Part of the active assembly of at least one of the Accused Instrumentalities is a pair of actuator arms (mechanical linear actuators) driven by the same cam that drives the arm of the knife drive assembly. The actuator arms each drive a lever, and each lever is coupled to a cam track."

> "The cam is at least part of a timing system that generates a mechanical control signal as it rotates, where the actuator arms move the cam tracks in response to the control signal. The active assembly, the pitting knife assembly, and the holder conveyor all operate in synchronism."

Thomas Decl., Ex. B, Table A1 at pages 9-12; Ex. F (drawings showing Accused Pitters).[3]

Crucially, nowhere in its Amended Infringement Contentions does Plaintiff allege that the Accused Pitters include pneumatically or solenoid-driven actuators. *Id.* Plaintiff later clarified in a follow- up email that what it has called an "actuator arm" (which it contends is a mechanical linear actuator) in its Amended Infringement Contentions is the "Connecting Rod" labeled in Dr. Klopp's exhibits. Thomas Decl., Ex. C. But as Dr. Klopp explains and as the videos show, this piece is a passive linkage that merely relays motion, and it moves in a complex non-linear path. Klopp Decl., ¶¶41, 59.

**F.** **Defendants' Meet and Confer Efforts with Regard to Undisputed Material Facts**

On Friday, July 27, 2012, counsel for Defendants wrote to counsel for Plaintiff, and provided a detailed set of proposed undisputed material facts, requesting a response by the following Wednesday, August 1. Thomas Decl., Ex. D. Among other proposed undisputed material facts, Defendants asked Plaintiff to confirm, as it must, that there are no solenoid- or pneumatically driven actuators connected to a pair or cam tracks, or equivalents thereof. *Id.*

In its August 3rd response, Plaintiff stated that these facts are "vigorously disputed legal

---

[3] Plaintiff also cited two drawings showing the configuration of each Accused Pitter, (Document Nos. DEF00026 and DEF00038) both of which are attached as Exhibit F to the Thomas Decl.

DOWNEY BRAND LLP

conclusions, rather than undisputed 'facts.'" Thomas Decl., Ex. E. For the reasons set forth in this motion, and the supporting declarations, photographs and videotapes, Plaintiff's position is unsupportable. All told, Plaintiff rejected all but five of Defendants' proposed undisputed material facts. *Id.* Even with respect to those five, Plaintiff's response improperly truncated or qualified the facts so as to render them misleading or immaterial. *Id.*

### III. LEGAL STANDARD

#### A. Summary Judgment Standard

A Court may grant partial summary judgment on a claim or defense where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A determination of patent infringement is a two step process. First, the claims are construed; second, the construed claims are compared to the allegedly infringing device. *Freedman Seating Company v. American Seating Company,* 420 F.3d 1350, 1356-57 (Fed. Cir. 2005). Here, the Court has performed the first step, which is a question of law. In order to demonstrate infringement, under the "all elements rule" a plaintiff must prove that the accused instrumentality contains each and every element, or its equivalent of at least one of the asserted claims. Where no reasonable jury could find infringement, summary judgment of non-infringement is appropriate. *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001) The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party carries its initial burden, the burden shifts to the nonmoving party to adduce evidence sufficient to demonstrate a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986)).

"A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, paragraph 2, is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims. . . ." *Biomedino, LLC v. Waters Techs. Corp.,* 490 F.3d 946, 949 (Fed. Cir. 2007). It is well established that indefiniteness as a ground for invalidating a patent claim is a legal conclusion that is amenable to resolution on summary

DOWNEY BRAND LLP

1  judgment. *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1371 (Fed. Cir.

2  2008); 3 Donald S. Chisum, Chisum on Patents, § 8.03[7] (2011). Similarly, compliance with the

3  written description requirement under section 112, first paragraph is amenable to summary

4  judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party.

5  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005).

6  **B.     Non-Infringement Standard Under 35 U.S.C. Section 112, par. 6**

7      "Literal infringement of a claim limitation in means-plus-function format 'requires that the

8  relevant structure in the accused device perform the identical function recited in the claim and be

9  identical or equivalent to the corresponding structure in the specification." *Welker Bearing Co. v.*

10  *PhD, Inc.,* 550 F. 3d 1090, 1099 (Fed. Cir. 2008) (quoting *Applied Med. Resources Corp. v. United*

11  *States Surgical Corp.,* 448 F.3d 1324, 1333 (Fed. Cir. 2006). The structural equivalent component

12  of the Section 112, ¶ 6 literal infringement test is a narrower version of what is often referred to as

13  the "tripartite test," or the "function, way, result test" and considers whether the differences

14  between the structure in the accused device and the structures disclosed in the specification are

15  insubstantial. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1309

16  (Fed. Cir. 1998). If the differences are not insubstantial, there is no literal infringement of a means-

17  plus-function claim. *Id.*

18      However, regardless of whether the differences in structure are insubstantial, a proposed

19  equivalent cannot vitiate an element of the claim. *Warner-Jenkinson Co. v. Hilton Davis Chem.*

20  *Co.,* 520 U.S. 17, 39 (1997). The doctrine of vitiation holds that each element contained in a patent

21  claim is deemed material to defining the scope of the patented invention, and the doctrine of

22  equivalents is "not allowed such broad play as to effectively eliminate [an] element in its entirety."

23  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1016-17 (Fed. Cir. 2006)

24  (citing *Warner-Jenkinson,* 520 U.S. at 29-30). The doctrine of vitiation is a question of law for the

25  court to determine. *Panduit Corp. v. Hellerman Tyton Corp.,* 451 F.3d 819, 826 (Fed. Cir. 2006).

26      Thus, even if two structures are equivalent, they cannot be found equivalent as a matter of

27  law if doing so would effectively read a claim limitation out or render a claim term meaningless.

28  *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1160 (Fed. Cir. 1998). Indeed, the court may not erase a

DOWNEY BRAND LLP

meaningful structural limitation of a claim on which the public is entitled to rely in avoiding infringement. *Conopco, Inc. v. May Dep't Stores Co.,* 46 F.3d 1556, 1562 (Fed. Cir. 1994).

## IV.  ARGUMENT

### A.  The Accused Pitters Do Not Infringe the '949 Patent.

#### 1.  The Accused Pitters Do Not Have an Active Assembly.

The undisputed evidence demonstrates that the Accused Pitters lack an "active assembly," as construed in the Court's Order. As noted above, the Court construed "active assembly" in relevant part as "an assembly containing pneumatically- or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, and equivalents thereof." Order at 27, 37. The Court explained:

> The relevant structural language is "an actively (*e.g.*, pneumatically, or by solenoid) driven actuator assembly" which moves "a pair of cam tracks." This language therefore leads to a construction of active assembly as "an assembly containing pneumatically- or solenoid-driven actuators connected to a pair of cam tracks." **The omission of the term "e.g." from this construction is intentional. "Pneumatically" and "solenoid" are the only types of "actuator" identified**.

Order at 26:22-25) (emphasis added). Because the specification variously uses both the terms "actuators" and "mechanical linear actuators," the Court included both terms in its construction "in an abundance of caution to ensure the construction does not exclude the preferred embodiments." *Id.* at 27:15-17. But the Court left no doubt that the specification supports, and thus the patent covers, only actuators (whether "mechanical linear" or not) that are pneumatically- or solenoid-driven. *Id.* at 26:13-27:19.

The Accused Pitters do not infringe because they undisputedly have no solenoid- or pneumatically-driven actuator and no solenoid- or pneumatically-driven mechanical linear actuator. It's that simple.

Because it loses under the Court's construction of "active assembly," Plaintiff has no recourse but to try to skew that construction. It does so in its Amended Infringement Contentions, which pretend that the Court construed the patent to cover pneumatically-driven actuators OR solenoid-driven actuators OR mechanical linear actuators, the latter even if neither pneumatically

12

DOWNEY BRAND LLP

nor solenoid driven. This interpretation of the Court's Order is untenable. The Court expressly

limited the types of covered actuators to those that are pneumatically or solenoid driven. It

included the term "mechanical linear actuators" in its claim construction "in an abundance of

caution" in order to be sure to capture both pneumatically- or solenoid-driven "actuators" and

pneumatically- or solenoid-driven "mechanical linear actuators."

This is clear not only from the Court's analysis but from the syntax of its construction,

under which "pneumatically- or solenoid-driven" modifies both "actuators" and "mechanical linear

actuators." The construction reads:

> An assembly containing pneumatically- or solenoid-driven
> actuators, or mechanical linear actuators, connected to a pair of cam
> tracks . . . .

If the Court had meant to include non-pneumatically or non-solenoid-driven mechanical linear

actuators, it would have so stated. The following construction, for example, would carry that

meaning:

> An assembly containing pneumatically-driven, solenoid-driven, or
> mechanical linear actuators, connected to a pair of cam tracks . . . .

The Court did not say this because, as its analysis makes clear, it did not mean this.

Nor could the Court have construed "active assembly" in the manner Plaintiff pretends it

did without creating yet another reason to invalidate the patent. As discussed at length below, a

means-plus-function patent is invalid if its specification fails to disclose a sufficiently specific

structure for performing each claimed function. *See, e.g., Biomedino, LLC v. Waters Tech. Corp.*,

490 F.3d 946, 949 (Fed. Cir. 2007) (holding specification's reference to "known differential

pressure, valving and control equipment" insufficiently precise to support means-plus-function

claim). If "active assembly" were construed to include the broad category of all mechanical

linear actuators – whether pneumatically- or solenoid-driven or not – the patent would fail under

*Biomedino* on this basis.[4] A large and diversity of devices fall within the generic category of

---

[4] As discussed below, the patent does fail under *Biomedino* because it does not adequately disclose
structure corresponding to a number of other claim terms. The point is that if the Court had construed
"active assembly" as Plaintiff pretends it did, it would have created yet another reason to invalidate the
patent.

13

DOWNEY BRAND LLP

"linear actuators." Klopp Decl., Ex. 2. Indeed, "mechanical linear actuator" is a functional description of what a device does, not a specific structure. Only as limited by the Court to pneumatically- or solenoid-driven mechanical linear actuators does "active assembly" have any hope of providing adequate structural specificity under controlling Federal Circuit case law. In other words, Plaintiff's effort to expand the Court's construction of "active assembly" in order to ensnare the Accused Pitters drives another nail into the invalidity coffin.

Finally, even if the Court had construed "active assembly" as Plaintiff pretends it did, and even if such a construction were not invalidating (and even if the patent did not suffer from other fatal validity problems), the Accused Pitters still would not infringe because **they uncontrovertibly do not contain linear actuators**. As explained by Dr. Klopp, an actuator is a mechanical device that causes displacement between two machine elements. Under Newton's laws of motion, an actuator requires power input; it cannot cause motion without power. Klopp Decl., ¶27. Moreover, a linear actuator causes displacement along a straight line. *Id*. at ¶30. The closing bars on the Accused Pitters are moved by a set of passive rotating mechanical linkages piggybacked on and moving in lock-step mechanical motion with the pitting knife drive. *Id*. at ¶¶30-61. The passive linkages are moved by the rotating output of a crank arm that is attached to the rotating output of a rotating motor. *Id*. at ¶41, 42. No point of any of the linkages moves in a straight line, and instead each travels in a complex nonlinear path through space. *Id*. One of the linkages is referred to in the Exhibits to the Klopp Declaration as a "Connecting Rod." Like all the others, this passive linkage moves in a complex non-linear path. Klopp Decl.,¶41. Moreover, it is not an actuator because it does not cause displacement between two machine components. *Id*. at ¶¶27, 30-34, 39. It merely passively relays motion from one component to another. As Dr. Klopp explains, "one cannot place the Connecting Rods on a workbench, connect them to a power source, and cause them to actuate." Klopp Decl.,¶59.

To the extent that plaintiff seeks to argue that the passive linkages on the Accused Pitters are the equivalent of a mechanical linear actuator, any such argument crashes into and is precluded by the doctrine of claim vitiation. The Federal Circuit has repeatedly held that rotational movement and linear movement cannot be treated as equivalents without violating the doctrine of claim

14

DOWNEY BRAND LLP

DOWNEY BRAND LLP

1   vitiation.  In *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1100 (Fed. Cir. 2008), the trial court

2   construed a "mechanism for moving said finger" limitation as a means-plus-function limitation

3   subject to 35 U.S.C. § 112 ¶ 6 and identified corresponding structure that moved rotationally

4   "along an arcuate path."  In affirming the trail court's grant of summary judgment of non-

5   infringement for defendant, the court distinguished between linear movement of the accused device

6   and rotational movement in the corresponding structure under 112 ¶ 6.  The Court held that "[t]he

7   record shows that [the accused device] propels clamping fingers in and out of the locating pin

8   **without any rotational movement**.  Instead [defendant's] **linear-moving mechanism** for finger

9   movement and the claimed 'mechanism for moving said finger' with a rotating central post are

10  'substantially different.'" *Id.* (emphasis added); *see Icon Health & Fitness, Inc. v. Octane Fitness*,

11  LLC, 2011 WL 2457914, at *9 (D. Minn. June 17, 2011, Fed. Cir. appeal pending) (granting

12  summary judgment of noninfringement on means-plus-function claim where patent claimed "linear

13  reciprocating displacement" and accused apparatus moved in slight arc).

14        Similarly, in a case involving folding bus seats, an accused seat that was "rotatably

15  mounted" to its base was not equivalent to a patented seat that was "slidably mounted" to its base.

16  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1361 (Fed. Cir. 2005).  Because sliding

17  is "not a subtle difference in degree, but rather . . . a difference in kind" from rotation, no

18  reasonable jury could find the two equivalent without vitiating the "slidably mounted" limitation.

19  *Id.* at 1362 (internal quotation omitted).

20        Here, just as in *Freedman*, *Welker, and Icon*, a determination that the rotating parts of the

21  Crank-Rocker Mechanism and the Four Bar Linkage of the Accused Pitters (which are not

22  actuators and do not move linearly) are equivalent to a straight-line moving mechanical linear

23  actuator would effectively read "linear" and "actuator" out of the claim.  The Accused Pitters are

24  substantially different functionally and structurally.  Klopp Decl., ¶¶ 52-54.

25        **2.    The Accused Pitters Do Not Have Actuators that Move Cam Tracks "In
           Response To Control Signals."**

26

27        There is at least a second, independent basis precluding infringement.  The rotating passive

28  linkages in the Accused Pitters do not move "in response to control signals."  Plaintiff has alleged

15

in its Amended Infringement Contentions that a "cam" is "at least a part of a timing system that generates a mechanical control signal as it rotates, where the actuator arms move the cam track in response to the control signal." Thomas Decl., Ex. B (A1, ¶¶9-12.) To the extent it makes sense to call a crank a cam (or combine it with the "cam" that moves the pitting knives), this so-called cam does not generate a signal (control, timing, or otherwise) as that term would be understood by a person of ordinary skill in the art. Klopp Decl., ¶ 66. Instead the "cam" is simply the crank attached to the motor output, which forces the linkages to move. Plaintiff has apparently conflated relaying a signal to cause a motion with relaying the motion itself. The force of the crank-causing movement is no more a "signal" here than a wrecking ball is a "signal" for a building to fall.

As Defendants' supporting expert declaration establishes, the timing of the pocket closure on the Accused Pitters cannot be adjusted without remanufacturing the machine—there is no "signal" that can be adjusted to "control" when the pockets close in relation to when pitting occurs. That force of the crank does not signal anything to move; it moves it. The timing of the pocket closure on the Accused Pitters cannot be adjusted without remanufacturing the machine—there is no "signal" that can be adjusted. Klopp. Decl., ¶ 68. The Accused Pitters are distinct from the patented technology because they work without the need for control signals or timing systems.

> ### 3. The Accused Pitters Do Not Infringe Under the Doctrine of Equivalents as Applied to a Section 112, ¶6 Claim Term.

When the alleged equivalent in the accused device does not involve after-invented technology, the means-plus-function literal infringement standard and the doctrine of equivalents collapse into a single § 112, ¶ 6 analysis. *Welker Bearing Co. v. PHD, Inc.,* 550 F.3d 1090, 1100 (Fed. Cir. 2008); *Bateman v. Por-Ta Target, Inc.*, 155 Fed. Appx. 511, 516-17 (Fed. Cir. 2005); *Chiuminatta*, 145 F.3d at 1311 ("where the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself. . . . , a finding of non-equivalence for § 112, ¶ 6, purposes should preclude a contrary finding under the doctrine of equivalents").

The technology of a rotating crank mechanism connected to various rotating passive linkages in the Accused Pitters is over 200 years old. Klopp Decl., ¶¶ 49-51. The '949 Patent

16

issued in 1999. Accordingly, the doctrine of equivalents analysis in this case collapses into the Section 112, ¶ 6 analysis of structural equivalence discussed above. As set forth above, the structural and functional differences are stark.

**4.** **Plaintiff's Contention That "The Active Assembly Of At Least One Of The Accused Instrumentalities Also Comprises A Spring That Assists In Moving The Pockets Of Each Of The Holders From The Closed Configuration To The Open Configuration After The Pitting Operation" Is Uncontrovertibly False.**

Notwithstanding the Court's Order, Plaintiff continues to assert in its Amended Infringement Contentions that "the active assembly of at least one of the Accused Instrumentalities also comprises a spring that assists in moving the pockets of each of the holders from the closed configuration to the open configuration after the pitting operation." Not so. The uncontrovertible evidence shows that the spring in question fails to satisfy the Court's construction of either the corresponding structure for active assembly or its function.

With respect to the structural requirement, Plaintiff's Amended Infringement Contentions do not actually state whether Plaintiff contends this spring is a pneumatically- or solenoid-driven actuator. It is neither, which alone dooms Plaintiff's contention. Further, the spring that Plaintiff relies upon is a component that is a part of the holder, and it travels with the holder around the continuous loop conveyor system.[5] Thus, it is not "connected to a pair of cam tracks, where the actuators move the cam tracks in response to control signals." It is a spring that is not connected to any cam tracks, and does not respond to any control signals. Accordingly, it does not satisfy the structural requirement.[6]

With respect to the functionality requirement, the Court has ruled that the "active assembly" must, among other things, "engage the holders as the holders pass the pitting knife assembly." Order, page 37. Here, the recited springs are attached to the holders and travel with them at all times. Thus, they do not "engage the holders as the holders pass the pitting knife assembly," and

---

[5] The spring referenced by Plaintiff is listed in the '949 Patent as part no. 62 in the description of the prior art ('949 Patent, col. 1, line 64), and can be seen in Figure 15.

[6] Plaintiff's assertion that this spring constitutes an "actuator" is also in conflict with the Court's finding that "'[p]neumatically' and 'solenoid' are the only types of 'actuator' identified" (Order, page 26, lines 21-25).

DOWNEY BRAND LLP

thus they perform a completely different function. *Welker Bearing Co.,* 550 F. 3d at 1099

("[l]iteral infringement of a claim limitation in means-plus-function format 'requires that the

relevant structure in the accused device perform the <u>identical</u> function . . . ") (emphasis added).

**B.     The '949 Patent is Invalid for At Least Two Independent Reasons.[7]**

    **1.     The Court Should Reach the Question of Invalidity on This Motion For Summary Judgment Even Though Plaintiff Cannot Establish Infringement.**

"In district court cases in which invalidity is asserted as a counterclaim, the Supreme Court

has held that the question of validity does not become moot when there has been a determination of

non-infringement.  For that reason, it is ordinarily necessary for the district court, and this court on

appeal, to address the counterclaim even if noninfringement has been found." *Solomon*

*Technologies, Inc. v. U.S. Int'l Trade Comm'n*, 524 F.3d 1310, 1319-20 (Fed. Cir. 2008) (citing

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)).

    This proposition is based on public policy and the notion that "an invalid patent is a blight

on the 'important public interest in permitting full and free competition in the use of ideas which

are in reality a part of the public domain,' and should be expunged whenever the issue can be

reached." *Hieger v. Ford Motor Co.,* 516 F.2d 1324, 1327 (6th Cir. 1975) (quoting *Lear, Inc. v.*

*Adkins,* 395 U.S. 653, 670 (1969)).  Moreover, a finding of both non-infringement and invalidity

will further the possibility that remand will not be imposed upon the parties after appeal. *Gambro*

*Lundia AB v. Baxter Healthcare Corp.,* 896 F.Supp 1522, 1530 (D. Colo. 1995), *rev'd,* 110 F.3d

1573 (Fed. Cir. 1997); *Innovative Scuba Concepts Inc. v. Feder Industries Inc,* 819 F.Supp. 1487,

1496 (D. Colo. 1993) (*rev'd on other grounds*, 26 F.3d 1112 (Fed. Cir. 1994).

    **2.     Claims 5 and 12 of the '949 Patent are Indefinite and Violate the Requirements of 35 U.S.C. section 112.**

    Section 112, par. 2, requires that the specification of a patent "conclude with one or more

claims particularly pointing out and distinctly claiming the subject matter which the applicant

regards as his invention."  35 U.S.C. § 112 ¶ 2.  An applicant may express an element of a claim

---

[7]  Defendants have also alleged that the '949 Patent is invalid as being anticipated and/or obvious in view of extensive prior art in this well developed field spanning many decades, but do not address them in the instant motion.  Defendants will do so at a later time if necessary.

"as a means or step for performing a specified function . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and the equivalents thereof." 35 U.S.C. § 112 ¶ 6. "In exchange for the ability to use a generic means expression for a claim limitation, 'the applicant must indicate in the specification what structure constitutes the means.'" *Ergo Licensing,* 673 F.3d at 1363 (quoting *Biomedino,* 490 F.3d at 948). The structure "must be clearly linked or associated with the claimed function." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1219 (Fed. Cir. 2003).

Failure to specify the corresponding structure in the specification amounts to impermissible pure functional claiming. *Id.* at 1211. "Although [§ 112 ¶ 6] statutorily provides that one may use means-plus-function language in a claim, one is still subject to the requirement that a claim 'particularly point out and distinctly claim' the invention." *In re Donaldson Co.,* 16 F.3d 1189, 1195 (Fed. Cir.1994) (en banc). "If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." *Id.*

Under 35 U.S.C. § 112 paragraphs 2 and 6, therefore, "a means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *AllVoice Computing PLC v. Nuance Commc'ns., Inc.,* 504 F.3d 1236, 1241 (Fed. Cir. 2007) (citing *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1381-82 (Fed. Cir. 1999)); *Ergo Licensing,* 673 F.3d at 1364 (citing *Blackboard, Inc. v. Desire2Learn Inc.,* 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("That ordinarily skilled artisans could carry out the recited function in a variety of ways is precisely why claims written in 'means-plus-function' form must disclose the particular structure that is used to perform the recited function.")).

The Federal Circuit's opinions in *Biomedino* and *Ergo* are instructive. Under facts similar to those here, the Court invalidated two patents and explained the important requirement of specifically identifying corresponding structure when relying upon means-plus-function claims. In *Biomedino*, the court held that the corresponding structure in a specification concerning the claim limitation "control means" was vague and insufficient, and that the patent was therefore invalid. In

19

its analysis, the court noted:

> The only references in the specification to the 'control means' are a box labeled 'Control' in Figure 6 and a statement that the regeneration process of the invention 'may be controlled automatically by known differential pressure, valving and control equipment.'

*Id.* at 949. The court held that the specification's reference to so-called "known" means and vague references to "differential pressure, valving and control equipment" rendered the disputed claims "indefinite in scope in violation of §112, ¶ 2 of the Patent Act." *Id.* In doing so, the court held that "a bare statement that known techniques or methods can be used does not disclose structure." *Id.* at 953.

Similarly, in *Ergo* the court held that the corresponding structure in a specification concerning the claim limitation "control means" was vague and insufficient. Although the specification referenced a corresponding structure as a "control device," the court found that a control device is not something that skilled artisans would recognize as a known structure. *Ergo,* 673 F.3d at 1364. The court noted that there were at least three different types of devices that could be considered a "control device" used by skilled artisans at the time the patent issued: microprocessors, discrete circuits connected to stepper motors, and analog circuits. *Id.* As a result, the court held that because section 112, paragraph 6 requires that a particular corresponding structure be disclosed, the reference to a general corresponding structure that could have been at least three different specific devices was insufficient as a matter of law and rendered the claim indefinite and thus invalid. *Id.*

Here, the Court ruled that the "control signals and the timing system that generates them" (*i.e.*, the control signaling means) are "necessary to the functionality described in the claims" and included them as essential elements in the means-plus-function construction of "active assembly." Order at 28:15-19. But the '949 Patent contains a woefully inadequate corresponding structure for the control signaling means. The specification merely states, "The control signals can be generated (in any of a number of well known ways) by a conventional timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly . . ." Thomas Decl. Ex. A, col. 20, lines 7 - 10. The '949 Patent provides no

further information with respect to the control signals or the manner in which they may be generated, or the structure or apparatus that might be used for doing so. Thomas Decl., Ex B; Klopp Decl., ¶¶ 70-73. The '949 Patent does not specify any of the alleged "number of well known ways" of generating control signals. *Id.*

The term "conventional timing system" used in the '949 Patent does not identify a particular structure that is capable of generating control signals. As Dr. Richard Klopp explains in his declaration, a conventional timing system could be dozens of devices, including, but not limited to, a digital computer, a programmable logic controller (a digital-computer-based system typically for industrial machine and process control), an analog integrated circuit (such as a LM555 timer chip), an analog discrete circuit, a mechanical escapement, a dashpot, a lighted fuse, a heated bimetallic strip, or even a human being. Klopp Decl., ¶¶ 70 - 73.[8]

Even under the most charitable reading, this purported corresponding structure in the '949 Patent is no more definite than the "known differential pressure, valving and control equipment" recited in *Biomedino* or the fatally indefinite "control device" in *Ergo*. Accordingly, the 949 Patent is invalid because the "conventional timing system" is an indefinite corresponding structure for the control signaling means in the "active assembly" of claims 5 and 12. Indeed, by claiming in its Amended Infringement Contentions that the crank arm/cam is "at least a part of a timing system," Plaintiff demonstrates just how indefinite the term "conventional timing system" is. Thomas Decl., Ex B (Table AI). As noted by Dr. Klopp, "if it includes cams (cranks), then there seems to be no recognizable limitation on what could constitute a timing system." Klopp. Decl. ¶ 73.

**3. The Written Description of the '949 Patent Does Not Support the Temporal Limitations of the Claim Term "Pitting Operation."**

**a. Written Description Legal Standard**

35 U.S.C. section 112 paragraph 1 requires that the "specification shall contain a written description of the invention . . . ." This requirement is separate and distinct from the enablement

---

[8] Even if a skilled artisan could find a number of "conventional timing system" structures that would effectively work does not save the claim from indefiniteness. "Under Section 112, ¶ 6, a patentee is only entitled to 'corresponding structure… described in the specification and equivalents thereof,' not any device capable of performing the function." *Ergo*, 673 F.3d at 1364.

requirement. *See, e.g., Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991); *see also Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 920-23, (Fed. Cir. 2004) (discussing history and purpose of the written description requirement); *In re Curtis*, 354 F.3d 1347, 1357 (Fed. Cir. 2004) ("conclusive evidence of a claim's enablement is not equally conclusive of that claim's satisfactory written description").

The written description requirement has several policy objectives. "[T]he 'essential goal' of the description of the invention requirement is to clearly convey the information that an applicant has invented the subject matter which is claimed." *In re Barker*, 559 F.2d 588, 592 n.4 (CCPA 1977). Another objective is to put the public in possession of what the applicant claims as the invention. *See Regents of the University of California v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed. Cir. 1997). "The 'written description' requirement implements the principle that a patent must describe the technology that is sought to be patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005).

To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention. *See, e.g., Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d at 1563. However, a showing of possession alone does not cure the lack of a written description. *Enzo Biochem, Inc. v. Gen-Probe, Inc.,* 323 F.3d 956, 969-70 (Fed. Cir. 2002).

      **b.**      **The '949 Patent Specification Fails to Describe Temporal Limitations of the Pitting Operation in Relation to the Position of the Pit.**

The Court construed "pitting operation" variously to mean "the process of removing a pit from a fruit and which continues until the pit is removed from the fruit" and "the process of removing a pit from a fruit and which continues until the pit is outside of the fruit." Order at 13:12-13, 37:row 2. This claim construction creates a temporal limit to the pitting operation that is based on the condition of the fruit—namely, *when* the pit is removed from (or, alternatively, outside of)

DOWNEY BRAND LLP

22

the fruit. However, although the Court provided this particular temporal claim construction at Plaintiff's urging, that construction is unsupported by the written description.

There is nothing in the written description that actually describes any temporal limitation of the pitting operation as a function of the position of the pit. Thomas Decl., Ex B. Nor is there anything in the written description that explains when in the cycle of the knife movement the pit is first outside of or removed from the fruit. *Id.* The absence of this information is a critical omission given that the pockets must open and close "in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly," (Order at 37:row 4) and given that the pockets also must open and close in relation to the pitting operation, which in turn depends upon the position of the pit in relation to the fruit.

Having urged the Court to issue a claim construction that included a temporal limitation on "pitting operation" based on the position of the pit relative to the fruit, within the context of a claim where certain functions must be performed at precise times relative to when the pitting operation is and is not occurring, the Plaintiff was required to have explained in the patent how to determine pit position and to explain when the pit is outside the fruit. But the '949 Patent fails to do either, in violation of the written description requirement. The '949 Patent specification fails to recite any type of sensor or sensing means within the fruit pitting apparatus or pocket to signal when the pit has been removed from or is outside the fruit, so as to either alert the user or to signal other portions of the apparatus that the pitting operation has ended. Klopp Decl., ¶¶ 74 - 78. There is no signal available to indicate to the machine when (a) to close and open the fruit holder pockets during and/or after the pitting operation, or (b) to vary the gripping force on the fruit during and/or after the pitting operation. *Id.* There is nothing to explain how this sensing could occur within each separate pocket, each of which holds a piece of fruit of unique character. This is not the sort of notice to the public sufficient to satisfy the written description requirement.

## C.      The Court Should Decline Jurisdiction Over the Remaining Contract Claim.

Assuming the Court grants the principal relief sought and either finds non-infringement or invalidity of the '949 Patent, or both, it should decline to exercise supplemental jurisdiction over the remaining state law claim.

DOWNEY BRAND LLP

A federal court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). If exercising supplemental jurisdiction does not advance the values of "economy, convenience, fairness, and comity," a federal court "should hesitate to exercise jurisdiction over state law claims . . . ." *Executive Software N. Am. v. United States*, 24 F.3d 1545, 1557 (9th Cir. 1994) (quoting *United Mine Workers v. Gibbs*, 366 U.S. 715, 726 (1966)), *overruled on other grounds by California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). A district court's decision whether to exercise supplemental jurisdiction after dismissing all claims over which it had original jurisdiction is purely discretionary and depends on a host of factors, including, among others, the circumstances of the particular case, the nature of the state law claims, and the relationship between the state and federal claims. *See Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997). "In the *usual* case in which federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996) (internal quotations and citations omitted), *overruled on other grounds by Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-01 n.3 (9th Cir. 1997).

Here, Defendants seek summary adjudication of claims 1, 2, 3 and 5, over which this Court has original jurisdiction and/or a Consent Decree involving the '949 Patent and a prior suit before this Court. If the Court grants Defendants such relief, Plaintiff's only remaining claim will be for breach of contract – a plain vanilla state law claim. In that claim, Vistan alleges that Mariani, an alleged former lessee, breached provisions of a lease agreement by improperly disclosing confidential information about Plaintiff's "business and pitting machines." Compl. ¶72. Vistan further alleges that Mariani breached the terms of a lease addendum by allegedly failing to allow its representatives to conduct certain inspections. *Id.* ¶77.

Continuing to exercise jurisdiction over the state law contract claims would not advance the values of economy, convenience, fairness, and comity. The resolution of a lease dispute does not implicate any of the issues that this Court has spent time addressing through its Claim Construction Order, or that it will address in deciding this Motion. No economy, convenience, or fairness will be

24

DOWNEY BRAND LLP

sacrificed by a dismissal of the state law claim; the parties have not conducted significant discovery regarding the state claim and the Court has spent no time on these issues. Thomas Decl., ¶10. No trial date has been set, and virtually no work has been done to prepare the state claim for trial. The focus to date has been on Plaintiff's patent infringement claims. Thus, any work that is ultimately done in state court, assuming *arguendo* this cause of action is refiled there, will not be duplicative of the work that has been done by the parties and this Court in this case.

The Court should follow the typical protocol and dismiss Plaintiff's state law claim following its summary adjudication. *See Reynolds*, *supra,* 84 F.3d at 1171 (remanding case to district court following grant of summary judgment of federal claims with instructions to dismiss state law claims after explaining that this is what should occur "in the usual case").

## V. CONCLUSION

Based on the foregoing, the Court should grant Defendants' Motion. There are no genuine issues of material fact and Defendants are entitled to summary judgment, or in the alternative partial summary judgment, of non-infringement of the '949 Patent, and invalidity of the '949 Patent, and a hearing concerning an award of fees pursuant to 35 U.S.C. section 285. The Court also should decline to exercise jurisdiction over the state law claim.


DATED: August 10, 2012                    DOWNEY BRAND LLP


                                          By:        */S/ Michael J. Thomas*
                                                     MICHAEL J. THOMAS
                                                Attorney for Defendants/Counterclaimants

DOWNEY BRAND LLP

Civ. Action No. 10-4862 JCS                P'S & A'S ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT