1   DOWNEY BRAND LLP
    MICHAEL J. THOMAS (Bar No. 172326)
2   ANDREW L. COLLIER (Bar No. 191137)
    SEAN J. FILIPPINI (Bar No. 232380)
3   621 Capitol Mall, 18th Floor
    Sacramento, CA  95814-4731
4   Telephone: (916) 444-1000
    Facsimile: (916) 444-2100
5   mthomas@downeybrand.com
    acollier@downeybrand.com
6   sfilippini@downeybrand.com

7   Attorneys for Defendants/Counterclaimants
    FADEI USA, INC., PAN AMERICAN
8   ENGINEERING and EQUIPMENT CO., INC.
    MANUEL SILVA, and MARIANI PACKING CO.,
9   INC.

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13  VISTAN CORPORATION,                  Case No.  C 10-4862 JCS

14              Plaintiff,               **DECLARATION OF MICHAEL J.**
                                         **THOMAS IN SUPPORT OF**
15         v.                            **DEFENDANTS' OPPOSITION TO**
                                         **MOTION FOR RELIEF PURSUANT TO**
16  FADEI USA, INC., PAN AMERICAN        **FEDERAL RULE OF CIVIL PROCEDURE**
    ENGINEERING and EQUIPMENT CO.,       **56(d)**
17  INC. MANUEL SILVA, and MARIANI
    PACKING CO., INC.,
18                                       Date:      September 7, 2012
              Defendants.               Time:      9:30a.m.
19                                       Dept:      Courtroom G, 15th Floor
                                         Judge:     Hon. Joseph C. Spero
20

21

22  AND RELATED CROSS-ACTION.

23

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

I, Michael J. Thomas, declare as follows:

1.      I am an attorney at law duly authorized to practice before all courts in the State of California and registered to practice before the United States Patent and Trademark Office.  I am a partner at the law firm of Downey Brand LLP, attorneys of record for Fadei USA, Inc., Pan American Engineering and Equipment Co., Inc., Manuel Silva, and Mariani Packing Co., Inc. (collectively, "Defendants").  I submit this Declaration in support of Defendants' Opposition to Motion for Relief Pursuant to Federal Rule of Civil Procedure 56(d).  I make this declaration of my own personal knowledge, and, if called as a witness, I could and would competently testify thereto.

2.      Plaintiff Vistan Corporation ("Plaintiff") has not accurately characterized the history of discovery and production of documents in this case.

3.      Plaintiff filed this lawsuit on October 27, 2010.

4.      Since then, Defendants have been extremely open about the operation of the accused infringing pitting machines located a Mariani's facility in Vacaville, CA and have allowed Plaintiff to inspect them for as long as Plaintiff wished to do so.  Indeed, even though Mariani had no obligation to do so, and without requiring a formal inspection demand, on or about June 6, 2011, by agreement of the Parties, counsel for Plaintiff, Michael J. Brown, and Plaintiff's representatives and various litigation consultants including Jeff Davis, reportedly a former employee of Plaintiff (who submitted a Declaration in Support of Plaintiff's Claim Construction Brief at Dkt. No. 60) inspected, touched, photographed, and videotaped one of the accused Fadei Prune Pitting Machines at the Mariani Packing Co., Inc. facility in Vacaville, California.

5.      My partner Andrew Collier, Mariani Manufacturing Supervisor Ben Rutter, I, and others were present for, facilitated, and observed Plaintiff's inspection.  The machine inspected was selected as an exemplar machine from a production line running ten substantially identical pitting machines.  As Mr. Rutter explains in his declaration , he followed whatever requests Plaintiff made to facilitate its inspection, and also removed various safety covers so that Plaintiff could see, touch, and document the precise details of any and all aspects of the machine.  I

1

DECLARATION OF MICHAEL J. THOMAS ISO
OPPOSITION TO RULE 56 MOTION.

1    specifically recall Mr. Rutter removing various covers and seeing Mr. Brown as if on his hands

2    and knees looking up under the machine to see beneath the pitting rubbers.  As Mr. Rutter

3    confirmed in his declaration filed in support of the motion for summary judgment, these are the

4    pitters described in Plaintiff's Amended Infringement Contentions, and shown in the photographs

5    and videotapes submitted to the Court both in connection with the *Markman* hearing and the

6    pending motion for summary judgment.

7           6.      During the inspection, Plaintiff was given as much time as it needed to inspect the

8    machine.  As I recall, the machine was operated by Mr. Rutter at various speeds as requested by

9    Plaintiff, including at full speed in the intermittent manner.  Mr. Rutter fulfilled these requests by

10   controlling the servo drive associated with the machine from a control panel in plain view of

11   Plaintiff's personnel and its counsel.  As Mr. Rutter confirms in his declaration, his servo drive

12   was a Eurodrive device referenced in Plaintiff's Rule 56(d) motion.  Of course, Mr. Rutter also

13   states in his declaration that because the knife drive and the rotating linkages connected to the

14   push bar operate in lock step with one another, and are both driven by the rotating output of a

15   single rotating motor connected to rotating crank arms, and as Dr. Klopp explains in his

16   declaration, Mr. Rutter was unable to, and did not, use the servo drive to alter the timing of when

17   the pockets of the holders close relative to the movement of the pitting knives.  According to Mr.

18   Rutter in his declaration, it would be impossible to do so.  Plaintiff also inspected the remaining

19   components of an earlier prototype machine that it had previously inspected, which I understand

20   had since been dismantled and used for parts.

21          7.      Given the broad scope of this inspection, Plaintiff's suggestion in its motion that

22   somehow it learned anything new about the Accused Pitters, or about the existence of the servo

23   drive/Eurodrive associated with the Accused Pitters, from watching video of a similar machine on

24   the internet is factually incorrect.  Indeed, Defendants produced to Plaintiff the very documents

25   referencing the Eurodrive servo drive that it relies upon in its motion. After receiving those

26   documents long ago, and since its inspection occurred over a year ago, Plaintiff has never

27   formally or informally requested any further inspection of Mariani's production line, and never

28   asked for any depositions concerning the servo drive, whether of a natural person or under Rule

2

1    30(b)(6).. I believe the reason it has not done so is because it fully understands (although

2    wrongly describes in its opposition to the summary judgment motion) the nature and operation of

3    the Accused Pitters located at Mariani's facility. Moreover, Defendants have never stated or

4    suggested that the motors that drive the cranks are not servo motors, or that one cannot remotely

5    cause these motors to operate at various speeds or intermittently. Indeed, Defendants have freely

6    admitted that these are intermittent pitting machines and demonstrated them as such.

7        8.    Obviously the subject servo motors so operate, but that misses the point. The

8    point of the motion for summary judgment as it relates to the absence of control signals (there are

9    other independent grounds for the motion not even addressed in Plaintiff's Rule 56(d) motion,

10   such as the absence of any required pneumatically-driven or solenoid-driven actuators) is that as

11   explained by Mr. Rutter and Dr. Klopp in their declarations, there are no such control signals that

12   allow one to control the timing of when the pockets of the holders close relative to the position of

13   the knives, which is the stated purpose of the control signals in the '949 Patent.

14       9.    In view of the foregoing, I drafted the pending motion for summary judgment

15   seeking adjudication of the infringement claims as framed by Plaintiff's Amended Infringement

16   Contentions. In its Amended Infringement Contentions, Plaintiff failed to contend, because it

17   cannot contend, that the Accused Pitters have pneumatically-driven or solenoid-driven actuators,

18   which pursuant to the Court's Claim Construction Order are required of any apparatus falling

19   within the scope of Claims 5 and 12 of the '949 Patent. In its contentions, Plaintiff contended

20   that "each" of the infringing machines operates in the manner described by Plaintiff in its

21   contentions, and expressly included the prototype machine that Plaintiff inspected, and the

22   production machine that Plaintiff inspected as noted above. These are the only infringement

23   contentions I have from Plaintiff and they were amended on or about July 3, 2012 – just last

24   month pursuant to our stipulation and a Court order, following the Court's Claim Construction

25   Order.

26       10.    The pending motion for summary judgment serves a very important practical

27   purpose for Mariani. Its production machines inspected by Plaintiff and depicted in the various

28   photos and videos provided to the Court obviously do not have pneumatically-driven or solenoid-

1  driven actuators.  Thus, notwithstanding Plaintiff's arm waiving about alleged discovery disputes,

2  summary judgment or partial summary judgment on Mariani's production machines as framed by

3  Plaintiff's infringement contentions will provide Mariani with the relief it has long needed to

4  remove the infringement allegation cloud under which it is unfortunately forced to operate at its

5  facility in Vacaville, CA.  I understand that Plaintiff speculates in support of its pending motion

6  under Rule 56(d) that summary judgment should be denied because Plaintiff believes that

7  somehow there might be some other infringing pitting machines elsewhere in Mariani's

8  possession.  This is incorrect: as Mr. Rutter states in his declaration, Mariani has no pitting

9  machines that use the pneumatically-driven or solenoid-driven actuators connected to cam tracks

10  as required by the Court's claim construction order.  As Mr. Rutter states, it never has, and no

11  amount of further discovery can possibly change this fact.

12         11.     On July 19, 2011, Defendants and Plaintiff participated in an Early Neutral

13  Evaluation Conference.  I was present at that conference, although I cannot discuss the details of

14  that conference as I understand that they are to remain confidential.  Nevertheless, I can say

15  generally that the parties discussed potential ideas for resolving the case including potentially

16  modifying the accused devices as a means of addressing Plaintiff's stated concerns, even though

17  Defendants believed and continue to believe there was no infringement and that the patent was

18  invalid.  At the end of the day, the early neutral evaluation conference was expressly left open by

19  the parties so that Defendants could explore this potential mode of resolution through design

20  alterations.  Even though Defendants believe that the accused devices never infringed in the first

21  place, Defendants undertook efforts in connection with the ENE process to explore potential

22  modifications so as to satisfy Plaintiff.

23         12.     Importantly, the parties understood and agreed that materials relating to any

24  modification arising out of the ENE would not be subject to disclosure.  This agreement was

25  confirmed in writing by counsel of record for Plaintiff, Michael Berg, Esq. in his letter of October

26  7, 2011, which stated in part as follows:

27

28         To the extent that information and/or documents responsive to our requests existed

4

independent of the ENE, then there is no reasonable basis for withholding that discovery. Likewise, if the information had an independent "life" from the ENE and defendants chose to make that information a subject of the ENE session, then we are entitled to the discovery. By way of illustration, using the example of the modifications to the accused device alluded to in your letter, if the modifications were proposed/discussed solely and for the first time in connection with the ENE session then we recognize the basis for withholding discovery—however, that does not afford defendants the right to foreclose discovery on modifications/alternatives considered, discussed, proposed, tested, implemented for purposes other than the ENE.

13.     A true and correct copy of Mr. Berg's letter is attached hereto as **Exhibit A.**

14.     Contrary to Plaintiff's assertions, Defendants have withheld only documents relating to modifications that were discussed for the first time at the ENE conference and Defendants have not withheld any documents relating to exploration of modifications that did not arise out of the ENE Conference.  I have never assumed or asserted that developments in pitting machines or alterations of pitting machines conducted in the ordinary course of business by my clients not for purposes of the ENE were somehow privileged from discovery simply because an ENE was conducted in this case.

15.     In July of 2011, Plaintiff served Defendants with Requests for Production, set one.

16.     In August 2011, Defendants provided timely responses along with responsive documents.

17.     On September 16, 2011, Defendant Mariani served Plaintiff with a Request for Production, Set One, that essentially asked for all documents relating to the allegations of Plaintiff's complaint.

18.     On November 14, 2011, Defendant Manuel Silva served Plaintiff with his own Request for Production of Documents, Set One.  Those document requests focused on Plaintiff's communications (emails, letters, etc.) as well as financial information relevant to Plaintiff's alleged damages claim.

19.     Also on November 14, 2011, Defendants wrote a meet and confer letter to Plaintiff and outlined a number of deficiencies in Plaintiff's document production.  A true and correct copy of the November 14 letter is attached hereto as **Exhibit B.**

5

20.     On November 29, 2011, Plaintiff responded by indicating that its document inspection was ongoing.  A true and correct copy of the November 29 letter is attached hereto as **Exhibit C**.

21.     On December 22, 2011, Defendants sent a further meet and confer letter demanding that Plaintiff produce responsive documents.  A true and correct copy of the December 22 letter is attached hereto as **Exhibit D**.

22.     On January 6, 2012, Plaintiff served Defendants with Requests for Production of Documents, Set Two.

23.     On January 18, 2012, Plaintiff responded to Defendants' demands for documents and stated that it was "still gathering and reviewing potentially responsive documents."  A true and correct copy of the January 18 letter is attached hereto as **Exhibit E**.

24.     On January 23, Defendants sent another letter to Plaintiff and demanded that Plaintiff produce responsive documents no later than February 6.  A true and correct copy of the January 23 letter is attached hereto as **Exhibit F**.

25.     On February 7, 2012, Plaintiff sent an email to Defendants and indicated that it still needed more time to produce responsive documents.  A true and correct copy of the February 7, 2012 email is attached hereto as **Exhibit G**.

26.     On February 8, 2012, in light of Plaintiff's continued failure to produce documents responsive to requests from September and November, Defendants demanded an in-person meeting, pursuant to the Court's Standing Order on discovery disputes.  As a result of Defendants' demand, a February 29 in-person meeting was scheduled.  A true and correct copy of the February 8, 2012 letter is attached hereto as **Exhibit H**.

27.     On February 9, 2012, Defendants provided timely responses to Plaintiff's Requests for Production, Set Two.

28.     On February 10, 2012, <u>after</u> Defendants had demanded the in-person meeting, Plaintiff finally produced certain responsive documents.

29.     On February 22, 2012, Plaintiff sent a meet and confer letter to Defendants taking issue with Defendants' document production and interrogatory responses from over 6 months

6

DECLARATION OF MICHAEL J. THOMAS ISO
OPPOSITION TO RULE 56 MOTION

1    earlier. Plaintiff raised these issues on February 22, 2012, one week before Defendants' in-person

2    meeting, even though Plaintiff had not raised a single discovery issue for over 5 months until that

3    point. A true and correct copy of the February 22, 2012 letter is attached hereto as **Exhibit I**.

4          30.     Among other things, Plaintiff's February 22, 2012 letter disputed the propriety of

5    Defendants' assertion that any documents relating to Defendants' ENE efforts to explore potential

6    modification the accused machines was not subject to disclosure.

7          31.     On February 24, 2012, Defendants took their February 29 in-person meeting off-

8    calendar. Defendants did so for two reasons. First, since Plaintiff had finally produced

9    documents <u>after</u> Defendants demanded the meeting, Defendants needed an opportunity to review

10    Plaintiff's recent document production to ascertain the extent of the production and determine

11    whether an in-person meeting was still necessary. Second, I had a schedule conflict arise. A true

12    and correct copy of the February 24, 2012 letter is attached hereto as **Exhibit J**.

13          32.     Plaintiff's Rule 56 Motion completely mischaracterizes Defendants' decision to

14    take its own meeting off calendar by suggesting that Defendants' cancellation of the meeting was

15    somehow a refusal to acknowledge Plaintiff's right to discuss discovery issues under the Court's

16    Standing Order. Plaintiff's mischaracterization to the Court omits critical facts. First, the Court's

17    standing Order on discovery disputes requires a minimum of 10 days' notice to calendar an in-

18    person meeting. To the extent that Plaintiff is suggesting that the purpose of the February 29

19    meeting was to discuss alleged deficiencies in Defendants' production (instead of Plaintiff's

20    months-long failure to produce any responsive documents in the face of multiple requests),

21    Plaintiff did not provide the proper amount of notice required by the Court's Standing Order.

22    February 22, 2012 was the first time in <u>over 5 months</u> that Plaintiff had identified any deficiency

23    in Defendants' discovery. Second, after Defendants took the February 29 meeting off calendar,

24    Plaintiff never calendared an in-person meeting of its own relating to the issues identified in its

25    February 22 letter. Defendants have <u>never</u> refused any in-person meeting demanded by Plaintiff.

26          33.     On March 2, 2012, Defendants provided a comprehensive, six-page response letter

27    to Plaintiff's February 22 letter. Defendants also enclosed a CD containing production

28    documents with that letter. A true and correct copy of the March 2 letter is attached hereto as

7

1    **Exhibit K**.

2         34.    Among other things, Defendants' March 2 letter reiterated the basis for

3    Defendants' refusal to disclose documents relating to Defendants' ENE efforts to explore

4    potential modification the accused machines.

5         35.    On March 8, 2012, Plaintiff wrote to Defendants and admitted that it had not yet

6    produced documents in a number of categories that were responsive to Defendant Manuel Silva's

7    Requests for Production, Set One, from November 2011.  Plaintiff, however, indicated that it

8    intended to produce the responsive documents within two weeks.  A true and correct copy of the

9    March 8 letter is attached hereto as **Exhibit L**.

10        36.    On March 16, 2012, Plaintiff sent a response to Defendants' March 2 letter and

11   alleged deficiencies in Defendants' document production.  A true and correct copy of the March

12   16 letter is attached hereto as **Exhibit M**.

13        37.    Plaintiff's March 16 letter identified a number of documents that it believed were

14   subject to production, including: 1) financial records; 2) documents relating to Defendants post-

15   ENE conference modification efforts; 3) indemnity agreements; 4) unspecified documents that

16   might be introduced at hearings or trial; 5) Mariani communications with Price Rubber (a supplier

17   to Mariani); and 5) Defendant Fadei's email communications.  Significantly, Plaintiff's March 16

18   letter did not identify a single document that is germane to Defendants' pending motion for

19   summary judgment.  Plaintiff's letter threatened an in-person meeting of its own if the identified

20   issues could not be resolved.

21        38.    On March 30, 2012, Defendants responded to Plaintiff's March 16 letter and

22   offered to compromise on a number of the document issues raised by Plaintiff.  However,

23   Defendants again disagreed about disclosure of documents relating to Defendants' ENE efforts to

24   explore potential modification the accused machines and refused to compromise regarding those

25   documents.  Defendants also noted that significant categories of Plaintiff documents responsive to

26   Defendants' document requests from October and November 2011 had still not been produced by

27   Plaintiff.  As a result, Defendants' March 30 letter concluded as follows:

28        We hope that this letter sufficiently addresses all the issues that Vistan wished to

discuss at the in-person meeting.  But regardless of whether this letter satisfied Plaintiff's issues, <u>we do not believe that Vistan presently has standing to request an in-person meeting</u> **because of the long standing deficiencies in Vistan's document production.**

**Nevertheless, if Vistan still demands an in-person meeting, please let us know and we will provide available dates.**

A true and correct copy of the March 30, 2012 letter is attached hereto as **Exhibit N**.

39.     Plaintiff's Rule 56 Motion asserts that Defendants' above-quoted letter "stonewalled" the court's meet and confer process.  In support of its stonewalling assertion, Plaintiff conveniently quotes only the underlined portion of the above letter and omits all of the remaining text quoted above.  (See Plaintiff's Points and Authorities, p. 3:22-25.)

40.     Plaintiff <u>never</u> asked for an in-person meeting after receiving Defendants' March 30, 2012 letter.  As a result, Plaintiff's allegation of "stonewalling" is a gross mischaracterization that amounts to overzealous and misdirected advocacy at best and to bad faith misrepresentation at worst.

41.     On April 3, 2012, Plaintiff made an additional production of documents responsive to Defendants' October and November 2011 document requests.

42.     On April 27, 2012, the Court issued its Claim Construction Order.

43.     On May 9, 2012, Plaintiff sent a letter to Defendants identifying categories of documents that it believed existed but had not been produced in response to prior discovery requests.  A true and correct copy of the May 9, 2012 letter is attached hereto as **Exhibit O**.

44.     In response, Defendants made a further document production to Plaintiff on May 18, 2012.

45.     On June 1, 2012, Plaintiff sent a letter to Defendants seeking specific documents relating to the court's construction of "control signals."  Plaintiff, however, did not propound additional Requests for Production seeking the specific documents.  Instead, Plaintiff claimed that the specific documents were responsive to the following two requests for production that had been propounded in January of 2012:

All Documents Referring or Relating to the creation, design, engineering, testing, specifications, research or development of any Accused Product.

9

All Documents Referring or Relating to the operation, benefits, functions, limitations, performance, characteristics, implementation, installation and/or use of any Accused Products.

A true and correct copy of the June 1 letter is attached hereto as **Exhibit P**.

46.     On June 5, 2012, Plaintiff sent a separate letter demanding documents relating to Defendants' ENE efforts to explore potential modification of the accused machines.  A true and correct copy of the June 5 letter is attached hereto as **Exhibit Q**.

47.     On June 6, 2012, Plaintiff sent another letter to Defendants acknowledging that substantial information had been produced by Defendants relating to the operation and maintenance of the Accused Devices but asserting that various other categories of documents remained outstanding, such as: technical documents relating to machines other than the accused devices, organizational charts, balance sheets, strategic business plans, revenues relating to licensing, sales, articles of incorporation, travel records, and price quotations.  A true and correct copy of the June 6 letter is attached hereto as **Exhibit R**.

48.     On June 15, 2012, Defendants sent a letter responding to Plaintiff's June 1, 5, and 6 letters.  In that letter, the Fadei defendants indicated that they had produced all documents responsive to Plaintiff's requests in their possession at that time.  Defendants further stated that defendant Mariani intended to make an additional production later that week.  Additionally, the June 15 letter again reiterated that Defendants would not produce any documents relating to Defendants' ENE efforts to explore potential modification the accused machines.  Defendants' June 15 letter concluded by stating that if Plaintiff had any issues relating to Defendants' production or discovery that Plaintiff was welcome to raise those issues at the upcoming June 22 in-person meeting.  A true and correct copy of the June 15 letter is attached hereto as **Exhibit S**.

49.     Due to an oversight at my office, the Mariani documents that we indicated would be produced within a week of the June 15 letter were not produced.  As set forth below, these documents are being produced by overnight mail contemporaneously with this declaration.  Nevertheless, for the reasons set forth below and in the opposition to the instant motion, I believe they should have no impact on the pending motion for summary judgment.

50.     On June 22, 2012, my co-counsel Andrew Collier and I traveled to Plaintiff's

10

counsel's offices in Walnut Creek to conduct an in-person meeting with Plaintiff's counsel, Robert McFarlane, concerning amendments to the infringement contentions and Defendants' invalidity contentions in view of the Court's Claim Construction Order.  At that meeting we discussed Plaintiff's amended infringement contentions as well as discovery issues.  With respect to the discovery issues, we clearly informed Mr. McFarlane that Defendants would not provide any documents relating to Defendants' ENE efforts to explore potential modification to the accused machines and that Defendants considered the matter closed.  We further informed Mr. McFarlane that if he had any issues with our position on discovery he should take it up with the Court.  At no point during that meeting did Mr. McFarlane raise any issue regarding Defendants' document production.

51.     On July 16, 2012, Plaintiff produced approximately 3500 pages of documents responsive to Defendants' document requests from October and November of 2011.

52.     On July 16, 2012, Plaintiff also sent Defendants a letter requesting that Defendants detail their efforts to locate documents.  A true and correct copy of the July 16 letter is attached hereto as **Exhibit T**.

53.     On July 27, 2012, Defendants sent a letter to Plaintiff stating that Defendants were going to move for summary judgment based on both non-infringement and invalidity.  That letter sought a stipulation on a number of facts supporting the motion, including that the accused pitters do not move cam tracks in response to control signals.  A true and correct copy of the July 27 letter is attached hereto as **Exhibit U**.

54.     On August 10, 2012, Defendants filed their motion for summary judgment.

55.     In response, Plaintiff filed its Rule 56(d) motion claiming that: 1) defendant Mariani had promised documents that were not yet produced; 2) Defendants refused to produce documents relating to Defendants' ENE related modification efforts; and 3) Plaintiff was entitled to depose Defendants' expert witness, Dr. Richard Klopp.

56.     Although a supplemental production of Mariani documents was promised in mid-June and not produced due to oversight, Plaintiff was not diligent about obtaining those documents either.  On June 15, Defendants represented that they intended to produce the

11

DECLARATION OF MICHAEL J. THOMAS ISO
OPPOSITION TO RULE 56 MOTION

1  documents within a week and, regrettably and unintentionally, did not do so.  But one week later,

2  I personally met with counsel for Plaintiff and he did not mention the documents at all.

3  Moreover, Plaintiff never sent any follow-up correspondence demanding the documents even in

4  the face of Defendants' July 27 letter informing Plaintiff that Defendants were moving for

5  summary judgment.  Even though over two weeks elapsed between Plaintiff being notified of

6  Defendants' intent to file for summary judgment and the filing of the summary judgment motion,

7  Plaintiff remained completely silent about the document issue and waited to raise it for the first

8  time in its Rule 56(d) motion.

9         57.     Plaintiff has not propounded any written discovery on any Defendant since the

10  Court issued its April 27, 2012 Claims Construction Order.

11        58.     Plaintiff has not noticed a single deposition in this case since filing suit in October

12  2010, nearly two years ago.

13        59.     Plaintiff has never scheduled any in-person meeting about a discovery issue since

14  filing suit in October 2010, nearly two years ago.

15        60.     Plaintiff has never moved to compel on any discovery issue since filing suit in

16  October 2010, nearly two years ago.

17        61.     To date, Defendants have produced 4,435 pages of documents.

18        62.     In light of the oversight in production that was brought to my attention when

19  Plaintiff filed its Rule 56(d) motion, I am serving these additional documents on Plaintiff on the

20  same date that I file this declaration.

21        63.     These documents comprise about another 500 pages of materials. I do not believe

22  any of them should have any impact on the pending motion for summary judgment.  For example,

23  there is a document concerning a newer version of a pitting machine developed by Fadei depicted

24  in a document I received following the filing of the pending summary judgment motion.  As can

25  be seen in this document, Fadei's product continues to lack a pneumatically-driven or solenoid-

26  driven actuator.  There are also documents concerning the servo drive/Eurodrive and its

27  operation, all of which was used from a control panel for Plaintiff during its inspection back in

28  2011.  Defendants produced documents regarding the Eurodrive long ago, *and Plaintiff itself*

12

DECLARATION OF MICHAEL J. THOMAS ISO
OPPOSITION TO RULE 56 MOTION

1   *produced to Defendants a manual for the Eurodrive earlier in this case.*  In short, Plainiff has

2   known about the Eurodrive for a very long time.  Additional electrical schematics and documents

3   concerning each of the Accused Pitters and the entire Mariani production line are included.

4   These documents also include a number of pages concerning certain modifications to the

5   production pitting machines in relation to the areas of the machine where the unpitted prunes first

6   enter the machine, which of course is unrelated to the form and function of the machines at issue

7   on the pending motion for summary judgment.  As Mr. Rutter explains, none of these documents

8   shows the presence of any pneumatically-driven or solenoid-driven actuators, nor do they show

9   the presence of any control signal, or any means whatsoever, that allows one to control the timing

10  of when the pockets/holders close relative to the knife position.

11         I declare under penalty of perjury pursuant to the laws of the State of California and the

12  United States that the foregoing is true and correct and that this Declaration was executed on

13  August 31, 2012, at Sacramento, California.

14                                      _____ /s/ *Michael J. Thomas*_____
15                                      MICHAEL J. THOMAS

16

17

18

19

20

21

22

23

24

25

26

27

28

13