DOWNEY BRAND LLP
MICHAEL J. THOMAS (Bar No. 172326)
ANDREW L. COLLIER (Bar No. 191137)
SEAN J. FILIPPINI (Bar No. 232380)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
mthomas@downeybrand.com
acollier@downeybrand.com
sfilippini@downeybrand.com

Attorneys for Defendants/Counterclaimants
FADEI USA, INC., PAN AMERICAN
ENGINEERING and EQUIPMENT CO., INC.
MANUEL SILVA, and MARIANI PACKING CO.,
INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTAN CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FADEI USA, INC., PAN AMERICAN ENGINEERING and EQUIPMENT CO., INC. MANUEL SILVA, and MARIANI PACKING CO., INC.,<br><br>　　　　Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No.  C 10-4862 JCS<br><br>**DEFENDANTS' SUPPLEMENTAL REPLY TO VISTAN CORPORATION'S SUPPLEMENTAL OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　December 14, 2012<br>Time:　　8:30 a.m.<br>Dept:　　Courtroom G, 15th Floor<br>Judge:　　Hon. Joseph C. Spero |

This case very nearly ended at claim construction, when the Court held that the term "active assembly" is indefinite – it might mean just about anything that could pit a prune – unless construed as a means-plus-function limitation. Although a means-plus-function construction saved Plaintiff's patent from immediate invalidation, it destroyed Plaintiff's infringement claims against Defendants. This is because the Court held that the structure corresponding to "active assembly" *must* include pneumatically- or solenoid-driven actuators, and it is undisputed that the Accused Pitters do not.

In its initial opposition to this motion, Plaintiff argued that the Court's claim construction order does not limit "active assembly" to actuators, or mechanical linear actuators, that are driven pneumatically or by solenoid. Defendants refuted that argument so effectively in their initial reply brief that Plaintiff all but abandons it in its supplemental opposition.[1] Instead, Plaintiff focuses on arguing that even if the Court's construction requires pneumatically or solenoid-driven actuators, and even though the Accused Pitters have neither, the Accused Pitters still infringe because they have the structural equivalent of pneumatically- or solenoid-driven actuators. In other words, Plaintiff seeks to recapture via equivalents the same broad range of structures – anything that will pit a prune – that the Court rejected as indefinite in the first place. Plaintiff wants a "function" claim limitation, not a "means-plus-function" claim limitation. Because Defendants' machines undisputedly pit prunes with structures not covered by Plaintiff's patent,

---

[1] Plaintiff also should realize it is estopped from making this argument. "The doctrine of judicial estoppel is invoked to prevent a party from changing its position over the course judicial proceedings when such changes have an adverse impact on the judicial process." *Key Pharms v. Hercon Labs. Corp.*, 161 F.3d 709, 715, n.1 (Fed. Cir. 1998) (citation omitted); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001). Plaintiff's current position is contrary to its claim construction position. It also is at odds with the testimony of Plaintiff's own expert, Jeff Davis, who twice opined in his claim construction declaration that he was able to understand the term "active assembly" only because, "[t]he specification's description of the active assembly provides *the two* examples of an actuator assembly driven pneumatically or by solenoid." (ECF No. 60, ¶¶ 21, 15) (emphasis added). Because the Court relied on that position, Plaintiff is estopped from changing it.

Plaintiff ironically contends that Defense expert Dr. Richard Klopp has changed *his* position. This is plainly incorrect. Dr. Klopp opined during claim construction that the term "active assembly" had no ordinary meaning. In view of the patent, the term appeared to refer to various components of "some variety." The patent vaguely states that the actuator may be of "another type" and Dr. Klopp was attempting to take that vague reference into account. '949 Patent, Col. 20. *After* the Court ruled this was a means-plus-function element with only a solenoid or pneumatically-driven actuator, Dr. Klopp was asked if he still believed the active assembly was an actuator of some variety, and he of course said no, in view of the Court's order.

1

summary judgment should be granted. Summary judgment also should be granted for the additional reasons discussed in Defendants' prior briefing. Nothing in Plaintiff's supplemental opposition or the recent discovery in any way changes the analysis.

### A.     Plaintiff Cannot Capture The Accused Pitters Via The Doctrine Of Equivalents.

Plaintiff's infringement contentions unambiguously provide:

> Part of the active assembly of at least one of the Accused Instrumentalities is a pair of actuator arms (mechanical linear actuators) driven by the same cam that drives the arm of the knife assembly."

ECF 68-1 at 9:10-12. This says, as clear as day, that the so-called "actuator arms" are mechanical linear actuators. Nevertheless, for good measure, Defendants asked Plaintiff's counsel to confirm the contention with regard to "active assembly." Plaintiff's counsel responded: "The Court also construed 'active assembly' to include mechanical linear actuators. A pair of actuator arms of the M-292 are shown in DEF00038 as part number 123 (which is defined in DEF00026 as an 'activation rod') and are depicted on both the left and right side of the accused machine." ECF 73. Ex. C. Unfortunately, as Defendants have previously established, the identified "actuator arms" are connecting rods – passive linkages – that cannot be considered actuators, or the equivalent of actuators, and they move in a wildly nonlinear fashion. Thus, under Plaintiff's own infringement contentions, the Accused Pitters do not infringe.

This point is so clear that Plaintiff actually concedes it in its supplemental opposition. *See* Supp. Opp'n. at 6:2-9. Instead of standing on its hopeless infringement contentions, Plaintiff attempts to informally amend them. Now, rather than designate only the "actuator arms" as the supposedly infringing actuator, Plaintiff contends that "the combination of the Activation Rod [actuator arm] and Drive Link [lever] being driven by the rotation of the Second Crank [cam] and pushing the Cam Tracks in and out (i.e., actuating the Cam Tracks) is an actuator." Supp. Opp'n at 5:10-12. This kind of last-minute about-face is not permitted. *See Kilopass Technology Inc. v. Sidense Corp.*, 2012 WL 3545286, at *8 (N.D. Cal. Aug. 16, 2012) (rejecting plaintiff's attempt to offer expert opinion that substantially departed from its infringement contentions because of the plaintiff's failure to comply with Patent Local Rule 3-6).

Even if such a departure were allowed, however, it would not solve Plaintiff's problem.

2

Simply put, if "the combination of the Activation Rod [actuator arm] and Drive Link [lever] being driven by the rotation of the Second Crank [cam] and pushing the Cam Tracks in and out" is equivalent to a pneumatically or solenoid-driven actuator, then any combination of mechanical parts that can pit prunes is, too.[2] We are back to the all-encompassing "active assembly."

This is precisely why the Court was on the verge of invalidating the patent, and nothing in the testimony of Dr. Klopp or Mr. Rutter is to the contrary. Dr. Klopp testified that some of an actuator's characteristics may be the same regardless of its power input. Plaintiff tries to twist this into an admission that the four-bar linkage is structurally equivalent to a solenoid or pneumatic actuator. But the fact that a number of different power inputs can be used to drive the machine does not make the *mechanisms* that close the pockets structurally equivalent to solenoid or pneumatic actuators. Dr. Klopp's supplemental declaration explains in detail why a solenoid or pneumatic actuator is vastly different from the apparatus on the Accused Pitters.

Nor does Mr. Rutter's suggestion that Fadei might consider solenoid actuators to open and close the push bar on the Accused Pitters demonstrate equivalence.[3] *Of course* someone might consider using solenoid actuators in a prune pitter. This does not mean that every prune pitter design is equivalent to one that uses solenoid actuators. It is undisputed that it would be impossible to run the Accused Pitters with a solenoid or pneumatic actuator without completely redesigning many parts of the machine and adding others. Also, Mr. Rutter's suggestion was never taken. Thus, if anything, this sequence of events underscores the *non*-equivalence of solenoid actuators, on the one hand, and of any part or parts of the Accused Pitters, on the other.

D.  **As A Matter Of Law, There Is No Such Thing As "Almost Linear."**

Even if the Court's construction of "active assembly" covered pneumatically-driven actuators OR solenoid-driven actuators OR mechanical linear actuators whether or not pneumatically- or solenoid-driven – and it does not – it remains undisputed that the Accused

---

[2] Defendants object to Dr. Bowser's testimony at paragraph 50 of his declaration (ECF 89) relating to equivalence because that testimony lacks foundation and is inadmissible. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 663-64 (6th Cir.2005); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047-48 (Fed.Cir. 2000).

[3] Defendants object to statements made by a third party manufacturer, referenced at p. 4:4-6, and the Fadei S.A. website. The statements lack foundation and are inadmissible hearsay.

3

Civ. Action No. 10-4862 JCS                         SUPPLEMENTAL REPLY ISO MOTION
                                                    FOR SUMMARY JUDGMENT

1  Pitters do not contain mechanical linear actuators. Plaintiff seizes on testimony from Juan Carlos
2  Morsucci, the designer of the Accused Pitters, to the effect that the "cam tracks"[4] move in
3  "almost linear" fashion. This is silly. The cam tracks move in an arcuate fashion; if they kept
4  going, they would travel in a perfect circle with a radius of about two feet. A small piece of any
5  circle, looked at in isolation, appears to the human eye to be "almost linear." This is why humans
6  long believed the Earth is flat. The Federal Circuit has held that arcuate motion is qualitatively
7  distinct from linear motion. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1100 (Fed. Cir.
8  2008); *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 2011 WL 2457914, at *9 (D. Minn.
9  June 17, 2011); *see also Bicon, Inc. v. Straumann Co.* 441 F.3d 945 (Fed. Cir. 2006) ("A claim
10 that contains a detailed recitation of structure is properly accorded correspondingly limited
11 recourse to the doctrine of equivalents.") Further, the "cam tracks" are not part of what Plaintiff
12 even now contends to be the actuator. Thus, even if Plaintiff's patent covered non-pneumatic,
13 non-solenoid mechanical linear actuators (and it does not), it would not cover the Accused Pitters.

14 **E.    The Required Control Signals Are Absent From The Accused Pitters.**

15      Plaintiff's argument regarding control signals is makeweight. Yes, the servo motors in the
16 Accused Pitters receive signals telling them to start and stop. But it is undisputed that those
17 signals do nothing to affect the relative timing of the knives and the fruit holders. The patent
18 requires control signals "useful to cause actuators to open briefly and then reclose the holder
19 pockets *at appropriate times* during the pitting cycle." '949 Patent at 20:8-15 (emphasis added).
20 An actuator that does not respond to such control signals cannot infringe. Otherwise, any device
21 that can be turned on and off would satisfy the "control signal" limitation.

22 **F.    Plaintiff's Own Expert, Dr. Bowser, Confirms the '949 Patent Is Invalid**

23      Plaintiff complains that Dr. Klopp does not have ordinary skill in the art because "has
24 never worked on a project directly related to handling individual pieces of fruit." The relevant
25 art, however, is not fruit pitting technology but machine and mechanism design. Dr. Klopp is
26 certainly an expert in that art, and, through his inspections, testing and observations, is intimately

---

[4] Again, these are not cam tracks, but Plaintiff insists on using the term, so Defendants do as well to avoid confusion.

familiar with the design and operation of the Accused Devices. ECF 74 at ¶¶1-12, 19-20. His qualifications are plainly sufficient. *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1377 (Fed.Cir.2010) (Court enjoys "wide latitude" to determine whether an expert has relevant technical expertise when weighing expert testimony).

But it is Dr. Bowser, not Dr. Klopp, who presents the greatest problem for Plaintiff. He testifies that the '949 Patent's "conventional timing system" could mean at least 16 disparate devices ranging from a coin-sized computer chip to a rotating crank arm. ECF 89 ¶ 93; *compare Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001) ("commercially available vacuum sensor" denoted far more limited range of structures). If all of these disparate devices fall within the definition of "conventional timing system," the term is undeniably indefinite. *See Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363-65 (Fed. Cir. 2012).

### G. The New Machine Is Irrelevant.

The new Fadei SA machine has no impact on the invalidity arguments or on Mariani's motion. Further, Defendants' Notice of Motion seeks a ruling only on the Accused Pitters "as alleged in Plaintiff's Amended Infringement Contentions." (ECF 71). Plaintiff admits the new machine is "significantly modified." Supp. Opp'n at 10:7. In addition, Fadei SA is continuously improving its machines. To allow new infringement contentions every time a new design is introduced would result in an *ever-pendent* lawsuit. If it can satisfy Rule 11, let Plaintiff file a new lawsuit. Finally, it would be inequitable to force Mariani Packing Company to participate in an infringement action concerning a machine it is not using.

It is time to bring this matter to a close and enter judgment in Defendants' favor.

DATED: November 15, 2012              DOWNEY BRAND LLP


By: _____/S/ Michael J. Thomas_____
    MICHAEL J. THOMAS
    Attorney for Defendants/Counterclaimants