United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VISTAN CORPORATION,

Plaintiff,

v.

FADEI, USA, INC., et al.,

Defendants.

Case No.: C-10-04862 JCS

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**

## I. INTRODUCTION

On October 27, 2010, Plaintiff Vistan Corporation ("Plaintiff") filed a complaint alleging infringement by Defendants Fadei, Inc., Pan American engineering and Equipment Co., Manuel Silva and Mariani Packing Co., Inc. ("Defendants") of U.S. Patent No. 5, 870,949 ("the '949 Patent"). Presently before the Court is Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"), and Plaintiff's Motion for Leave to Serve its Supplemental Infringement Contentions ("Motion for Leave"). The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). On December 14, 2012, the Court held a hearing on the Motion. Having considered the record, and the arguments

made at the hearing, the Court GRANTS the Motion for Summary Judgment and DENIES Plaintiff's Motion for Leave. In light of the Court's conclusion that Defendants' accused products do not infringe the patents in suit, the court exercises its discretion and declines to address the invalidity of the '949 Patent. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370–71 (Fed. Cir. 2003). Therefore, the Court dismisses Declaratory Judgment Claim 1 of Mariani's counterclaim without prejudice, *see* Dkt. No. 10 at 16, and dismisses Declaratory Judgment Claim 1 of Fadei, Pan American, and Silva's counterclaim without prejudice, *see* Dkt. No. 11 at 16. The Court, having dismissed all federal claims, also declines to exercise pendant jurisdiction over the remaining state law claims.

## II. BACKGROUND

### A. The '949 Patent and the Asserted Claims

The invention disclosed in the '949 Patent is entitled "Pitting Apparatus With Box Cam; Wiping Blade, or Separating Assembly." Declaration of Michael J. Thomas in Support of Defendants' Motion ("Thomas Decl."), Ex. A (the '949 Patent).

The patented invention is designed to remove pits from prunes or dates ("or similar soft fruit"). '949 Patent 1:6–8. The patented invention contains at least one "box cam" assembly for driving the pitting knives to the holders containing the fruit, a separating assembly, which improves the efficiency of separation of the pitted fruit flesh from the holders after pitting, and a wiping blade that wipes pits from the holders after the fruit has been pitted. The invention has two main embodiments—one that is continuous, meaning that the holders are driven continuously during pitting, and one in which the holders can be driven intermittently so that they are stationary during pitting.

Vistan asserts claims 5 and 12 of the '949 Patent. Dkt. No. 68, Ex. A (Vistan's First Amended Infringement Contentions), 1; Joint Statement of Undisputed Facts ("JSUF"), ¶ 30.

<u>Claim 5 provides, in relevant part</u>:

> [A]n active assembly positioned to engage the holders as the holders pass the pitting knife assembly, and configured to cause the pockets of each of the holders to be in the closed configuration during the pitting operation and to move the pockets of said each of the holders from the closed configuration to the open configuration after the pitting operation thereby

> improving efficiency of separation of pitted fruit flesh from the holders after said pitting operation.

'949 Patent, 21:43-51.

Claim 12 provides, in relevant part:

> [A]n active assembly positioned to engage the holders as the holders pass the pitting knife assembly, and configured to move relative to the holders so as to vary the gripping force exerted by the pockets on specimens of fruit held in said holders during and after the pitting operation, thereby improving efficiency of separation of pitted fruit flesh from the holders after said pitting operation.

*Id.* at 22:47-54.[1]

**B. The Motion**

Defendants argue that their accused fruit pitting machines ("the Accused Pitters") do not infringe the '949 Patent as a matter of law. Defendants assert that the Accused Pitters do not have an "active assembly." Motion at 12. Defendants argue that this Court, during claim construction, construed the term "active assembly" in relevant part as "an assembly containing pneumatically- or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, and equivalents thereof." *Id.* (quoting Dkt. No. 67, Claim Construction Order ("Order"), 27, 37). Relying on this Court's explanation for its construction,[2] Defendants contend that the Court "left no doubt that the specification supports, and thus the patent covers, only actuators (whether 'mechanical linear' or not) that are pneumatically- or solenoid-driven." *Id.* Defendants reject Plaintiff's broad

---

[1] Vistan accuses two different fruit pitting machines of infringing the asserted claims, "identified by Model Number M292 and embodied in Serial Nos. 725 and 742 and all machines substantially identical thereto." Vistan's First Amended Infringement Contentions, 2.

[2] Defendants quote the following section of the Order:

> The relevant structural language is "an actively (e.g., pneumatically, or by solenoid) driven actuator assembly" which moves "a pair of cam tracks." This language therefore leads to a construction of active assembly as "an assembly containing pneumatically- or solenoid-driven actuators connected to a pair of cam tracks." The omission of the term "e.g." from this construction is intentional. "Pneumatically" and "solenoid" are the only types of "actuator" identified.

Order at 26.

United States District Court
Northern District of California

reading of the Order to include all mechanical linear actuators, whether pneumatically- or solenoid-driven or not, as counter to the syntax of the Order's cited passages. Because the Accused Pitters indisputably do not contain solenoid- or pneumatically-driven actuators, and no solenoid- or pneumatically-driven mechanical linear actuators, the Accused Pitters do not infringe. *Id.*[3]

Defendants further argue that even if the Court construed "active assembly" as Plaintiff suggests, the Accused Pitters still would not infringe because they do not contain "linear actuators." *Id.* at 14. Defendants identify "passive linkages" of the Accused Pitters, which they assert do not move in a linear fashion. *Id.* ("No point of any of the linkages moves in a straight line, and instead each travels in a complex nonlinear path through space."). Nor are the "passive linkages" "actuators" since an actuator must cause displacement between two machine components and the linkages "merely passively relay[] motion from one component to another." *Id.* (citing Declaration of Dr. Richard Klopp in Support of Defendants' Motion ("Klopp Decl."), ¶ 59.[4] Defendants also contend that the rotational movement of the passive linkages cannot be deemed the equivalent of linear movement without violating the doctrine of claim vitiation. *Id.* at 14-15 (citing *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1100 (Fed. Cir. 2008); *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 2011 WL 2457914, at *9 (D. Minn. June 17, 2011); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1361 (Fed. Cir. 2005)).

Defendants next argue that the Accused Pitters do not infringe because the "rotating passive linkages" do not move "in response to control signals," as required by the patent. Defendants reject Plaintiff's assertion in its Amended Infringement Contentions that the "cam" generates a control signal which is relayed to the linkages, causing the linkages to move. *Id.* at 16 (citing Thomas Decl., Ex. B (Amended Infringement Contentions), ¶¶ 9-12). Instead, Defendants argue that the cam is

[3] Defendants also contend that if the Court did adopt such a broad construction, the patent would be invalid since "mechanical linear actuator" does not provide adequate structural specificity required for means-plus-function patents. *Id.* at 13-14 (citing *Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007)).

[4] Defendants describe the relevant operation of the Accused Pitters as follows: "The closing bars on the Accused Pitters are moved by a set of passive rotating mechanical linkages piggybacked on and moving in lock-step mechanical motion with the pitting knife drive. [Klopp Decl.] at ¶¶30-61. The passive linkages are moved by the rotating output of a crank arm that is attached to the rotating output of a rotating motor. *Id.* at ¶41, 42." Motion at 14.

simply the crank attached to the motor output that forces the linkages to move; it relays motion, rather than relaying a signal. *Id.* ("The force of the crank-causing movement is no more a 'signal' here than a wrecking ball is a 'signal' for a building to fall.").[5]

**C. The Opposition**

Plaintiff first contends that summary judgment should be denied because Defendants destroyed essential evidence of their infringement. Plaintiff's Opposition to Defendants' Motion ("Opposition"), 5. Plaintiff states that it inspected one of the Accused Pitters (Model 292, serial no. 725) at Defendant Mariani's facility in Vacaville, California on September 30, 2010. *Id.* Plaintiff took photos of the machine, but complied with the instructions of a Mariani manager and deleted the photos before leaving the facility. *Id.* After filing this action, Plaintiff returned to the facility on June 6, 2011to conduct another inspection of the Accused Pitters. *Id.* at 6. At that time, Defendants informed Plaintiff that Machine No. 725 had been dismantled and many of its parts sold. *Id.*

Although Plaintiff was able to inspect another Accused Pitter (Model 292, serial no. 742), it argues that the two machines are different in two material respects. First, the two machines are different in that they "changed from a cam system to a plunger system." *Id.* Second, the cams that drove the machine's "chuck holders" in Machine No. 725 were different than those in Machine No. 742. *Id.* Plaintiff concludes that "[t]hese alterations, which involve the assembly that controls the opening and closing of the pockets on the accused devices, directly implicate the 'active assembly' of the accused machine at issue on this motion." *Id.* Plaintiff further argues that because the two machines are materially different, evidence regarding Machine No. 725 has been completely lost due to Defendants' conduct and Plaintiff is entitled to an inference—at trial and at summary judgment—that Machine No. 725 infringed the '949 Patent. *Id.* (citing, *inter alia*, *Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002); *Pauls v. Green*, 816 F. Supp. 2d 961, 981 (D. Idaho 2011)).

Turning to the merits of Defendants' Motion, Plaintiff rejects the assertion that the Accused Pitters do not include a mechanical linear actuator. *Id.* at 9. First, Plaintiff argues that the Court's

[5] Defendants request that this Court, if it finds non-infringement, should decline to exercise supplemental jurisdiction over the remaining state law contract claim. Motion at 23.

United States District Court
Northern District of California

Claim Construction Order does not require that the mechanical linear actuator be driven by pneumatics or solenoid. *Id.* Plaintiff contends that the Court recognized a separate, alternative preferred embodiment that includes a mechanical linear actuator. *Id.* ("Preferred embodiments can incorporate a 'pneumatic cylinder,' or alternatively, 'a mechanical linear actuator.'" (quoting Order at 27)). Plaintiff states that its interpretation is consistent with how one of ordinary skill in the art would understand the disclosure—that a mechanical linear actuator may be driven "at least in part by" not only pneumatics or solenoid but mechanical inputs such as a gear, threaded rod, cam, or crank. *Id.* at 10. Even if the Court were to find that only pneumatically- and solenoid-driven actuators are disclosed, Plaintiff contends that a "mechanically driven mechanical linear actuator" is structurally equivalent because they are interchangeable. *Id.* (citing Declaration of Professor Timothy Bowser ("Bowser Decl."), ¶ 47; *Icon Health & Fitness v. Octane Fitness*, 2011 WL 2457914, *3 (D. Minn. June 17, 2011)).

Second, Plaintiff argues that the Accused Pitters do include an "actuator," which Plaintiff identifies as "[t]he Activation Rod and Drive Link [] driven by the rotation of the Second Crank." *Id.* at 11 (citing Bowser Decl. at ¶¶ 51-52).

Third, regarding the "linear" requirement, Plaintiff asserts that mechanical linear actuators typically convert rotational motion into linear motion, which the actuator identified above does by effecting "substantially linear motion on the Cam Tracks." *Id.* at 11-12 (citing Bowser Decl. at ¶ 60). Plaintiff states that the "so-called arcuate path of the Cam Tracks during their actuation is approximately ½ inch in the horizontal direction and 0.0035 inches in the vertical direction, which is squarely within the class of linear actuators for a fruit pitting apparatus." *Id.* at 12 (citing Bowser Decl. at ¶¶ 63, 64, 68). Plaintiff asserts that there is a disputed issue of fact as to whether the "insignificant arcuate motion cannot be equivalent to linear motion" and the cases cited by Defendants do not dispose of the issue. *Id.* at 13.

Plaintiff also rejects Defendants' argument that the Accused Pitters do not infringe because they lack the requisite control signal. Plaintiff defines a signal as "[a]nything, such as light, sound, location, or movement, which serves to convey information," and it defines a control signal as a "signal utilized to control a device or process." *Id.* at 15 (citing Bowser Decl. at ¶ 80). Plaintiff

asserts that, here, there are two control signals. First, the rotation of the Second Crank is movement that conveys information that is used to control a device or process—that is, "actutation of the Cam Tracks." *Id.* Second, the Accused Pitters include "servodrivers" that generate control signals to which the Cam Tracks move in response. *Id.* at 16. Plaintiff states that the servodrivers (or, "controllers") control the servomotors. *Id.* Here, there are two servomotors: the First Servomotor (which drives the pitting knives) and the Second Servomotor (which drives the conveyor). *Id.* The servomotors "allow a user to program the Servomotors to work precisely with respect to output shaft speed and position over time." *Id.*

**D. Supplemental Briefing**

Following the close of briefing on the Motion, the Court granted Plaintiff's Rule 56(d) motion, deferring the Motion and providing Plaintiff with an extension of time to obtain certain discovery. *See* Dkt. No. 103. The Court ordered supplemental briefing from the parties following the completion of that discovery. *See id.*

In its Supplemental Opposition, Plaintiff asserts that Dr. Klopp, Defendants' expert, as well as Defendant Fadei and a third-party manufacturer, all agree that the Accused Pitters include an actuator. Plaintiff's Supplemental Opposition ("Suppl. Opp."), 4 (citing Suppl. Klopp Decl., ¶ 23; Declaration of Russell C. Peterson in Support of Plaintiff's Suppl. Opp. ("Peterson Suppl. Decl."), Ex. B (Deposition of Ben Rutter), 195:7-24, 198:13-20; Peterson Suppl. Decl., Exs. C & G). Plaintiff contends that the remaining dispute is merely over which components constitute the actuator, and such a dispute prevents a finding of infringement. *Id.* (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999)).

Plaintiff rejects Defendants' assertion that its Amended Infringement Contentions limit a mechanical linear actuator to a single component. *Id.* Plaintiff argues that the Patent Local Rules require only that the disclosures put Defendants on adequate notice of Plaintiff's theories of infringement. *Id.* (citing *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2005 U.S. Dist. LEXIS 44138 (N.D. Cal. 2005)). Plaintiff further argues that Defendants never asked Plaintiff if their infringement contentions were intended to "so drastically limit the allegations of the mechanical linear actuator." *Id.* at 5.

United States District Court
Northern District of California

Additionally, Plaintiff refers to Dr. Klopp's deposition and asserts that Dr. Klopp "admitted that one of ordinary skill in the art could select the power input to a mechanical linear actuator and model it such that different power inputs, such as pneumatic motors or electric motors, could create a similar functioning actuator." *Id.* at 7 (citing Peterson Suppl. Decl., Ex. A (Klopp Depo.), 84:19-85:8). Plaintiff also presents evidence from a third-party who testified that he advised Defendant Mariani to replace the current actuator in the pitting machines with "solenoids fired by a proximity sensor." *Id.* at 8 (citing Peterson Suppl. Decl., Ex. B (Rutter Depo.), 175:24-176:9). Thus, Plaintiff concludes, the "actuator in the Accused Pitters is interchangeable with, and structurally equivalent for, a solenoid." *Id.* (citing *Interactive Pictures Corp, v. Infinite Pictures, Inc.*, 274 F.3d 1311, 1383 (Fed. Cir. 2001)).

Plaintiff further contends that summary judgment is not proper as to Fadei, Silva, and Pan American because Plaintiff recently learned that those defendants imported "a new and significantly modified version of the accused M-292 automated prune pitter ('the 2012 Model')," and the Motion does not address the 2012 Model. *Id.* at 10.

## III. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "Celotex requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts

showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

**B. Infringement Standards**

A determination of infringement is a two-step process. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed.Cir. 1997). The first step is claim construction, which is a question of law to be determined by the court. *Id.* The second step is an analysis of infringement, in which it must be determined whether a particular device infringes a properly construed claim. *Id.* This analysis is a question of fact. *Id.*

For a means-plus-function claim, literal infringement "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Gen. Protecht Group, Inc. v. Int'l Trade Comm'n*, 619 F.3d 1303, 1312 (Fed. Cir. 2010) (internal quotation marks omitted). "A structure in the accused device constitutes an equivalent to the corresponding structure in the patent only if the accused structure performs the identical function 'in substantially the same way, with substantially the same result.'" *Id.* (quoting *Applied Med. Res. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006)); *see Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) (stating that in order to literally infringe, "the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 'equivalent,' i.e., (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure").

In general, a finding of lack of literal infringement for lack of equivalent structure for purposes of § 112, ¶ 6 will preclude a finding of equivalence under the doctrine of equivalents. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998). This rule, however, is not applicable when a variant of the invention is developed due to technological advances, and this variant constitutes so insubstantial a change from what is disclosed in the patent that infringement should be found. *Id.*

United States District Court
Northern District of California

**IV. ANALYSIS**

Defendants' Motion does not dispute that the Accused Pitters perform the identical function recited in the claim "active assembly," which this Court construed as a means-plus-function claim under 35 U.S.C. § 112 ¶ 6. Rather, Defendants argue that there is no literal infringement because the relevant structure is neither identical nor equivalent to the corresponding structure in the specification. The Court agrees.[6]

**A. Whether a Mechanical Linear Actuator Must be Pneumatically- or Solenoid-Driven**

The parties dispute whether the Court construed the term "active assembly" such that if the Accused Pitters include mechanical linear actuators,[7] those actuators must be pneumatically- or solenoid driven. In its Claim Construction Order, the Court construed "active assembly" as follows:

> Structure: An assembly containing pneumatically- or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, where the actuators move the cam tracks in response to control signals generated by a timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly.
>
> Function: to engage the holders as the holders pass the pitting knife assembly, and, either (claim 5) to cause the pockets of the holders to be closed during the pitting operation and to move to the open configuration after the pitting operation, or, (claim 12) move relative to the

---

[6] Plaintiff asks this Court to deny summary judgment because an adverse inference against Defendants should be made as a result of the destruction of one of the Accused Pitters. Plaintiff asserts that the jury in this case will be entitled to make an inference that the destroyed pitting machine infringed the '949 Patent. The Court declines to grant such a broad inference on the record presently before it. Although Plaintiff's Amended Infringement Contentions allege that both machines infringe the '949 Patent in the exact same way, Plaintiff argues that the machines "are different in material respects." Plaintiff, however, provides only conclusions supporting its argument that the differences are material. *See* Opposition at 6 (stating that one machine has a plunger system while the other has a cam system, and that the cams that drive the "chuck holders" are different). Because Plaintiff has not shown that the absence of evidence of the destroyed machine affects the Court's summary judgment determination in any way, the Court will not deny summary judgment simply because of Defendants' alleged spoliation. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010) ("A district court's adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence.").

[7] The Court assumes, for the purposes of this Motion, that the Accused Pitters include mechanical linear actuators.

> holders so as to vary the gripping force exerted by the pockets on the fruit at appropriate times during and after the pitting operation.

Dkt. No. 67 at 37. The Court explained its construction:

> The relevant structural language is "an actively (e.g., pneumatically, or by solenoid) driven actuator assembly" which moves "a pair of cam tracks." This language therefore leads to a construction of active assembly as "an assembly containing pneumatically- or solenoid-driven actuators connected to a pair of cam tracks." The omission of the term "e.g." from this construction is intentional. "Pneumatically" and "solenoid" are the only types of "actuator" identified.
>
> . . .
>
> When describing preferred embodiments, the patent further elaborates on the actuators which are an integral part of the active assembly:
>
> > In preferred embodiments, *each actuator 88 includes a pneumatic cylinder* configured to pull or push track 87 coupled thereto (to move the track to the left or right when viewed as in FIG. 24) in response to externally supplied (or internally generated) control signals. The control signals can be generated (in any of a number of well known ways) by a conventional timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pitting knife assembly, so as to be useful to cause actuators 88 to open briefly and then reclose the holder pockets at appropriate times during each pitting cycle. In other preferred embodiments, *each actuator 88 is a mechanical linear actuator* configured to pull or push track 87 coupled thereto (to move the track to the left or right in FIG. 24) in response to externally supplied (or internally generated) control signals of the described type. In still other embodiments, *each actuator 88 is an actuator* of another type configured to pull or push track 87 coupled thereto (to move the track to the left or right in FIG, 24) in response to externally supplied (or internally generated) control signals as described.
>
> '949 Patent at 20:4-24 (emphasis added). Preferred embodiments can incorporate a "pneumatic cylinder," or alternatively, a "mechanical linear actuator." Claim constructions that exclude preferred embodiments are disfavored. [Citing cases.] Even so, preferred embodiments are part of the entire class of embodiments; therefore these (mechanical linear) actuators in the preferred embodiments must be "actively (e.g., pneumatically, or by solenoid) driven." But in an abundance of caution to ensure that the construction does not exclude the preferred embodiments, the construction should specifically incorporate "mechanical linear actuator" in some way.

*Id.* at 26-27.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff argues that the Court's construction—"An assembly containing pneumatically- or solenoid-driven actuators, or mechanical linear actuators"—allows mechanical linear actuators that are neither pneumatically- nor solenoid driven.[8] Plaintiff's interpretation, however, ignores the context and reasoning of the Court's construction.

In identifying the corresponding structure that performs the invention's function, the Court found that the corresponding structure—the "assembly"—contained "pneumatically- or solenoid-driven actuators." Because the written description did not identify any other means by which to drive the actuators, the Court removed "e.g." from the construction. The Court also, "in an abundance of caution," incorporated "mechanical linear actuators" into the construction given that it was disclosed as a preferred embodiment. However, the Court noted that even as a preferred embodiment, mechanical linear actuators are still part of the general class of embodiments; "therefore these (mechanical linear) actuators in the preferred embodiments must be 'actively (e.g., pneumatically, or by solenoid) driven.'" The Court's use of a parenthetical—"(mechanical linear) actuators"—demonstrates that *any* actuator in the preferred embodiments must be pneumatically- or solenoid-driven. Plaintiff's argument that the Court identified mechanical linear actuators as a separate class of actuators that fall outside the patent's requirement that actuators be pneumatically- or solenoid-driven is unsupported by the Court's Order.[9]

The Court is also not persuaded by Plaintiff's argument that its interpretation of the Order is consistent with how one of ordinary skill would understand the disclosure. Plaintiff's expert states that "requiring a mechanical linear actuator to be driven *solely* by pneumatics or a solenoid goes completely against the understanding of one of ordinary skill in the art." Bowser Decl., ¶ 49

---

[8] The parties agree that "a pneumatically-driven actuator is one driven by compressed air," Bowser Decl., ¶ 41, and that "a solenoid-driven actuator is one driven by a magnetic field created by an electric current in a helically coiled conductor," *id.* at ¶ 42.

[9] Nor does the '949 Patent support such a finding. While the patent introduces "mechanical linear actuator" with the phrase "[i]n other embodiments," the use of the word "other" does not mean that mechanical linear actuators are excluded from the identified corresponding structure applicable to the other actuators identified in the patent. *See* '949 Patent, 20:14-15. Indeed, the next sentence in the patent provides, "[i]n still other embodiments, each actuator 88 is an actuator of another type." *Id.* at 20:18-19. Although "other" is used to introduce "actuator[s] of another type," those actuators are still part of the class of actuators that must be pneumatically- or solenoid-driven. To find otherwise may have resulted in a finding in Defendants' favor on their indefiniteness challenge.

(emphasis added). Contrary to Plaintiff's assumption, the Court's construction does not require that the mechanical linear actuators be "driven" *solely* by pneumatics or solenoid. The phrase "pneumatically- or solenoid-driven mechanical linear actuator" plainly envisions the presence of mechanical components. Furthermore, Plaintiff asserts that "[a] mechanical linear actuator is an actuator that is driven *at least in part* by a mechanical element such as a gear, threaded rod, cam, or crank." Opposition at 10 (citing Bowser Decl., ¶ 43) (emphasis added); *see also* Bowser Decl., ¶ 40 ("I agree with the following definition of an actuator: "an electric, hydraulic, mechanical, or pneumatic device, *or combination of these*, to [a]ffect some predetermined linear or rotational motion.") (emphasis added). Plaintiff thus acknowledges that one of ordinary skill in the art would understand that a mechanical linear actuator could be driven, at least in part, by a non-mechanical element. Such an understanding is consistent with the proper interpretation of the Court's Order.

The Court also notes that Plaintiff appears to use the term "driven" imprecisely to refer to the components of the mechanical linear actuator. Although Plaintiff and its expert state that a mechanical linear actuator "is driven at least in part by a mechanical element such as a gear, threaded rod, cam, or crank," Plaintiff's expert quotes Wikipedia's description of a mechanical linear actuator,[10] which provides a different description: "Mechanical linear actuators typically operate by conversion of rotary motion into linear motion. *Conversion* is commonly made via a few simple types of mechanisms: Screw . . . Wheel and axle . . . and cam actuators." Bowser Decl., ¶ 43 (quoting Ex. G (Wikipedia Entry for "Linear Actuator")) (emphasis added); *see also id.*, Ex. G, 2 ("Mechanical actuators typically convert rotary motion of a control knob or handle into linear displacement via screws and/or gears to which the knob or handle is attached."). Additionally, Plaintiff cites to Defendants' expert's Exhibit 2 as providing examples of mechanical linear actuators. Plaintiff's expert states that Dr. Klopp's Exhibit 2 depicts "mechanical linear actuators being driven by a threaded rod and worm gears—a form of mechanical linear actuator that is not

---

[10] Plaintiff's expert states that "[a]lthough I understand Wikipedia is not an authoritative source, it describes a mechanical linear actuator consistent with my understanding." Bowser Decl., ¶ 43. Plaintiff's expert attaches the Wikipedia page for "linear actuator" to his declaration as Exhibit G. The Court notes that Wikipedia references are not a useful source of evidentiary or expert support. *See Gonzales v. Unum Life Ins. Co. of America*, 861 F. Supp. 2d 1099, 1104 n.4 (S.D. Cal. 2012); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007).

United States District Court
Northern District of California

shown to be driven by a pneumatic cylinder or a solenoid." Bowser Decl., ¶ 48. However, while Exhibit 2 indisputably depicts at least some mechanical linear actuators, it plainly does not depict what drives the actuator, i.e., what causes it move—compressed air, electricity from a magnetic field, an electric motor, etc. The mechanical components identified by Plaintiff as "driving" the actuator more correctly *convert* the driving force applied to the actuator into linear motion. In any event, whatever mechanical components convert motion must be driven by a pneumatic or solenoid power source.

Even if the mechanical components of the actuator could be considered as, at least in part, "driving" the actuator, the driving force Plaintiff ignores—the motion applied to the actuator causing movement—could presumably come from various sources. A human,[11] an electric motor, compressed air (pneumatics), or electricity in a magnetic field (solenoid) all appear to be possibilities.[12] The mechanical linear actuator must be pneumatically- or solenoid-driven and Plaintiff has not presented any fact to the Court that suggests that this is not possible or otherwise inconsistent with the understanding of one of ordinary skill in the art.

---

[11] While a human cannot constitute a "means" supporting a means-plus-function claim, *see Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300 (Fed. Cir. 2005), the point here is that an actuator can be driven in numerous and varied ways; thus, the fact that the '949 Patent discloses the means by which the actuators are driven is not entirely surprising.

[12] Plaintiff confirms that this is also its understanding when discussing whether there is literal infringement based on an equivalency theory, which is discussed in the following section. Plaintiff states:

> Dr. Klopp' s deposition testimony supports Plaintiff's argument that even if Defendants' narrow interpretation of the claim construction is considered, the mechanical linear actuator of the Accused Pitters is the structural equivalent of an actuator *powered by* a solenoid or pneumatically. Dr. Klopp admitted that one of ordinary skill in the art could select *the power input* to a mechanical linear actuator and model it such that *different power inputs, such as pneumatic motors or electric motors*, could create a similar functioning actuator.

Pl.'s Suppl. Opp. at 7 (emphasis added).

**B. Whether the Servomotor-Driven Mechanical Linear Actuator in the Accused Pitters is Equivalent to a Pneumatically- or Solenoid-Driven Mechanical Linear Actuator**

Because there is no dispute that the Accused Pitters perform the identical function, the next question in the literal infringement analysis is whether the servomotor-driven mechanical linear actuator is equivalent to the structure identified in the patent. As noted above, "after determining that the accused device performs the identical function, [the court must determine] whether it performs the function in substantially the same way to achieve substantially the same result." *IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435 (Fed. Cir. 2000); *see Gen. Protecht Group, Inc.*, 619 F.3d at 1312.[13]

At the most basic level, a pneumatic or solenoid power source runs on pressurized air or a magnetic field created by an electric current, respectively. *See* JSUF at ¶¶ 13, 16. Defendants' expert testifies that a pneumatic or solenoid power source is significantly different structurally than the motor driving the Accused Pitters. *See* Klopp Decl., ¶¶ 52, 53.

Plaintiff argues that the structures, though different, are equivalent because they are "interchangeable." Plaintiff's expert further states that a mechanical linear actuator driven by a "mechanical input" is the "substantial equivalent" of a mechanical linear actuator that is driven by pneumatics or a solenoid. Bowser Decl., ¶ 50 ("One of ordinary skill would understand that it is a matter of design choice to select between pneumatic or solenoid inputs on the one hand and mechanical inputs on the other. Any one of these selections are [sic] an actively driven actuator."). This is the only paragraph in Bowser's declaration that provides his opinion and explanation on why he believes the "mechanical input" is an equivalent structure. Plaintiff also contends that Defendants' expert admits that the structure of the Accused Pitters is equivalent. Pl.'s Supp. Opp. at

---

[13] As noted above, a finding of lack of literal infringement for lack of equivalent structure for purposes of § 112, ¶ 6 will preclude a finding of equivalence under the doctrine of equivalents. *See Chiuminatta*, 145 F.3d at 1310. The exception to this general rule—a variant of the invention is developed due to technological advances, and this variant constitutes so insubstantial a change from what is disclosed in the patent that infringement should be found—is not applicable to this case where the technology for the power source of the Accused Pitters (a motor) was developed before the invention in the '949 Patent. *See id.* Accordingly, to the extent the parties' arguments addressing the equivalency issue relate to rules found only under the doctrine of equivalents, those arguments are not on point.

7 (“Dr. Klopp admitted that one of ordinary skill in the art could select the power input to a mechanical linear actuator and model it such that different power inputs, such as pneumatic motors or electric motors, could create a similar functioning actuator.”).

To begin, Plaintiff fails even to identify the precise power source for the mechanical linear actuator, let alone provide any analysis comparing the structure of the Accused Pitters to the claimed structure. Plaintiff’s expert provides no evidence beyond the conclusory observation that a “mechanical input” is the structural equivalent of the disclosed structure. Even if Dr. Klopp admitted during deposition that different power inputs could create a similar functioning actuator—that is, the “output characteristics of an actuator could be essentially the same,” *id.*—Plaintiff has failed to address whether the *power source* for the mechanical linear actuators of the Accused Pitters performs the function in substantially the same *way* as a pneumatic or solenoid power source. Rather, the limited evidence Plaintiff provides speaks to only the second part of the equivalency test—whether the *results* obtained are substantially the same.

On summary judgment, it is the patentee’s burden to show, by a preponderance of the evidence, infringement under an equivalency theory. *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007). Plaintiff has presented no evidence that would allow a reasonable jury to conclude that the “servomotor” in the Accused Pitters operates in substantially the same way as a pneumatic or solenoid power source driving a mechanical linear actuator of the ‘949 patent.

The Court also rejects Plaintiff’s conclusion that the structures are equivalent because they are interchangeable. Plaintiff’s only case cited in support, *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, held that the “known interchangeability test” could lead to a finding of equivalency where expert testimony established that a skilled artisan “would contemplate the interchange as a design choice.” 274 F.3d 1371, 1383 (Fed. Cir. 2001). However, “[t]he question of known interchangeability is not whether both structures serve the same function, but whether it was known that one structure was an equivalent of another.” *Chiuminatta*, 145 F.3d at 1309. After all, “[a]lmost by definition, two structures that perform the same function may be substituted for one another.” *Id.* Plaintiff has presented no testimony regarding interchangeability beyond the single

conclusory sentence in its expert's declaration stating that "it is a matter of design choice" to select between the structures. The lack of any explanation or analysis by Plaintiff suggests to the Court that Plaintiff's interchangeability argument boils down to the unremarkable fact that pneumatically- or solenoid-driven mechanical linear actuators can accomplish the claimed function as a mechanical linear actuator driven by some other means. However, it is not enough to show that the two structures perform the same function, *id.*; "[s]uch evidence does not obviate the statutory mandate to compare the accused structure to the corresponding structure." *Id.* at 1310. As discussed above, Plaintiff has not made such a comparison.[14]

Finally, Plaintiff provides a quote—without analysis—from *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, reciting that where "the disclosed physical structure is of little or no importance to the claimed invention, there may be a broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention." 2011 WL 2457914, at *9 (D. Minn. June 17, 2011) (quoting *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1436 (Fed. Cir. 2000)). The Federal Circuit in *IMS* went on to state that "a rigid comparison of physical structures in a vacuum may be inappropriate in a particular case. Indeed, the statute requires two structures to be equivalent, but it does not require them to be 'structurally equivalent,' i.e., it does not mandate an equivalency comparison that necessarily focuses heavily or exclusively on physical structure." 206 F.3d at 1436.[15]

---

[14] Plaintiff further represents that a third-party manufacturer, Ben Rutter, suggested to Fadei that the actuator currently in the Accused Pitters be replaced with a solenoid. Pl.'s Suppl. Reply at 7-8 (citing Peterson Suppl. Decl., Ex. B (Deposition of Ben Rutter), 175:24-176:9). Plaintiff argues that this is evidence that the "actuator in the Accused Pitters is interchangeable with, and structurally equivalent for, a solenoid." This argument, however, is mistaken because the question is not whether the actuator itself is interchangeable with a solenoid, or a pneumatic, but rather whether the power source driving the mechanical linear actuator in the Accused Pitters is equivalent to the pneumatic or solenoid power source driving the mechanical linear actuator in the '949 Patent. In addition, as explained above, it is not enough to show that the two structure perform the same function.

[15] The court provided the following example:

> A claim includes part A, part B, and "means for securing parts A and B together in a fixed relationship." The written description discloses that parts A and B are made of

United States District Court
Northern District of California

The invention in *IMS* was an apparatus that permitted interactive programming of a machine tool. *See* 206 F.3d at 1436-37. The structure at issue was the "interface means" used to store the programs created using that programming apparatus. *See id.* at 1437. The patented product used a tape cassette transport; the accused product used a floppy disc drive. *See id.* The court vacated the grant of summary judgment of noninfringement because the plaintiff "provided some evidence of structural similarity" between the two devices and determined that the substantiality of the differences was an issue of fact "in light of the role played by the 'interface means' in the claimed invention." *See id.* The Court stated that "[t]his does not appear to be a case in which any physical characteristics of the interface means, such as the specific format of recorded data and the mechanism for accessing data, are important to the invention." *Id.*

As already discussed, Plaintiff fails to provide any nonconclusory evidence demonstrating that, upon comparison, the servomotor operates in substantially the same way as the power source that would drive the pneumatically- or solenoid-driven actuators disclosed in the '949 patent, such as a pneumatic motor. In *IMS*, there was at least "some evidence of structural similarity;" here, there is zero evidence of structural similarity—only a conclusory interchangeability argument.[16] Requiring that Plaintiff produce some evidence of structural similarity does not contravene the Federal Circuit's warning against "a rigid comparison of physical structures in a vacuum." *See IMS*, 206 F.3d at 1436. Rather, Plaintiff's lack of evidence has prevented the Court from conducting *any*

---

> wood and are secured together by nails. For purposes of the invention, it does not matter how parts A and B are secured; nails are not a critical part of the invention. A screw is not a nail, but for purposes of § 112, ¶ 6, it is equivalent structure in the context of the invention, though it is not the "structural equivalent" of a nail.

*Id.*

[16] At the hearing, Plaintiff was asked multiple times to articulate its theory of equivalency beyond the conclusion that the power sources produced the same output and were therefore interchangeable. Plaintiff was unable to do so. Additionally, following the hearing, Plaintiff submitted its reply in support of its motion to amend its infringement contentions, which Plaintiff used as an opportunity to supplement its summary judgment briefing with further expert testimony. While the Court does not consider this evidence on summary judgment, it is noteworthy that Plaintiff continues to avoid comparing the accused structure to the corresponding structure. Rather, Plaintiff again relies exclusively on a bare interchangeability argument. *See* Dkt. No. 139, Declaration of Dr. Bowser, ¶ 36 ("One of ordinary skill in the art can select between pneumatic motors and electric motors and specify the characteristics to achieve the same output.").

comparison, let alone a "rigid" comparison. Plaintiff has simply failed to meets its burden on summary judgment to demonstrate infringement by a preponderance of the evidence. Without some evidence of structural similarity, no reasonable jury could find that the structure in the Accused Pitters fits into even the "broader range of equivalent structures."

Defendants' Motion for Summary Judgment of non-infringement is accordingly GRANTED.[17]

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Partial Summary Judgment is GRANTED and Plaintiff's Motion for Leave is DENIED. Plaintiff's state law claim is DISMISSED without prejudice for want of federal jurisdiction. The Clerk is directed to close the file.

IT IS SO ORDERED.

Dated: January 10, 2013

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

[17] Because the Court finds that the Accused Pitters do not infringe based on their lack of pneumatically- or solenoid driven actuators or their equivalents, the Court declines to address Defendants' remaining non-infringement arguments.

Additionally, the Court DENIES Plaintiff's Motion for Leave to Serve its Amended Infringement Contentions. Plaintiff filed its motion 10 days before the hearing on Defendants' Motion for Summary Judgment, asserting that a new 2012 model of the Accused Pitters has recently been discovered. In light of the Court's ruling granting summary judgment in Defendants' favor, the Court declines to allow Plaintiff to supplement its infringement contentions to identify an entirely new product at this final stage of the litigation.